WILLIAM DeLORENZO, PLAINTIFF, v. CITY OF HACKEN-
SACK, A MUNICIPAL CORPORATION OF NEW JERSEY,
AND PARKING AUTHORITY OF THE CITY OF HACK-
ENSACK, A BODY CORPORATE AND POLITIC, DEFEND-
ANTS.

Superior Court of New Jersey
Law Division

Decided September 14, 1951.

342

Mr. William DeLorenzo, pro se.

Mr. Dominick Fondo, attorney for defendant Parking Authority of the City of Hackensack.

*Mr. Ernest Weller,* attorney for defendant City of Hackensack.

DANIEL J. BRENNAN, J. S. C. This matter comes before the court on plaintiff's motion for judgment on the pleadings and on the motion for the same relief on the counterclaim and cross-claim filed in behalf of the defendant Parking Authority of the City of Hackensack. The attorney for the defendant City of Hackensack appeared on oral argument in support of the allegations contained in its answer and in response to notices of these motions now before the court. Relief sought is an adjudication and declaration of the rights, status or other legal relations of the parties under written contracts of January 24, 1951, April 1, 1951, and June 4, 1951, made between the defendants, and an adjudication of the validity of these contracts.

The contracts embrace three tracts of land in the City of Hackensack and by the terms thereof the authority leases to the city and the city leases from the authority for the term ending December 31, 1983, each of several projects, the parking areas referred to in paragraph 1 of the contracts, at an annual rental of the several amounts set out in the annexed schedule of installments of rent. The authority, under the terms of the contracts, has the right to

"mortgage any of its property and thereby to grant to, or agree with, or for the benefit of any holders of any of its bonds, whether past, present or future, the same shall comprise a lien prior to that of the City hereunder, and further, the Authority shall have the right to pledge or assign either in whole or in part any and all instalments of rent due and to grow due to it hereunder as security or otherwise for the payment of the interest upon and principal of any and all bonds issued by it on such terms and in such manner as it may determine."

Plaintiff's attack on the validity of the contracts falls into two parts and will be considered accordingly. The first point of plaintiff's argument is that the city entered into the contracts by resolution and without the adoption of an

ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the said contracts; that the only appropriation for funds made by the city in its budget of appropriations was that required to meet the payments due in the current year of 1951. It is urged that *R. S.* 40 :50–6, which provides that

"No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract,"

is a legal deterrent to such course of procedure. It is undisputed that the appropriation required to be met for the year 1951 was included in the annual budget of the city for that year. This is sufficient satisfaction of the law, and that more is not necessary is indicated in *Debow v. Lakewood Township*, 131 *N. J. L.* 291 (*Sup. Ct.* 1944). In that case the court said, at *page 296* :

"Clearly it would have been absurd to have included the total estimated costs (about $30,000) in the budget of the year when the contract was executed. There could have been no point in appropriating $30,000 and thus raise the tax rate accordingly when there was no need for any such sum that year. The money so needed was on hand. As for moneys which thereafter might be needed annually, the township, as we have seen, agreed annually to appropriate about one-sixth of the estimated total costs out of which respondent was to be paid. This would appear to be a practical and business-like arrangement. It does not unnecessarily add in one tax year to the none too light burdens of the taxpayer. It spreads that burden. Comparable contractual arrangements have been held free from illegality."

In *Viracola v. Long Branch*, 1 *N. J. Misc.* 200 (*Sup. Ct.* 1923), the court said:

"The amount required to pay for the removal of garbage and ashes for the first year is included in the budget for the year 1923. We are of the opinion that the above section does not require the passage of an ordinance, whereas, in this case, the sums necessary to meet

the obligations under the contract are included in the annual budget, and that this is the meaning of the clause in the section above quoted, reading, 'the cost of which is to be met by funds other than those included in the budget of appropriations for the year.' "

█ For his second point plaintiff argues as well that the contracts in question are void in that they involve the expenditure of money in excess of the amount appropriated for such purpose and that this is prohibited by *R. S.* 40:2–29. However, the statutory provision is that nothing in the section contained shall prevent the making of contracts or the spending of money for capital projects to be financed in whole or in part by the issuance of notes or bonds, nor the making of contracts of lease for a period exceeding the fiscal year in which contract is made "when otherwise provided by law."

The statutory provisions applicable to the instant case bring it within the exception contained in *R. S.* 40:2–29. The pertinent statutory provisions follow:

*R. S.* 40:60–25.2: "Any municipality may acquire by lease or leases any land or lands therein * * * for the purpose of making the same available to the public for the parking of vehicles. Any such lease shall be for such period or periods of time and upon such terms and conditions as the governing body of the municipality, by resolution duly adopted by the affirmative vote of the majority of all the members thereof, shall determine."

*R. S.* 40:60–25.4: "The rents and other * * * expenses incident to the * * * operation of any such public parking areas may be raised by general taxation."

*R. S.* 40:56–1.1: "Any municipality may undertake, as a local improvement, the work of providing facilities for the parking of motor vehicles by the acquisition and improvement of real property and by the construction of buildings and structures. Any such acquisition may be by purchase or lease."

*R. S.* 40:56–1.2: "Any such local improvement may be undertaken as a separate and distinct work or in connection with the creation of a parking authority pursuant to the parking authority law (*P. L.* 1948, *c.* 198), or in the furtherance of any project of a parking authority heretofore or hereafter created by the municipality pursuant to said parking authority law."

*R. S.* 40:56–1.3: "Whenever any such local improvement is undertaken, the provisions of the chapter to which this act is a supplement (40:56–1 *et seq.*) shall be applicable."

*R. S.* 40:56–1: "Any municipality may undertake any or all of the works mentioned in this section as a general improvement to be

paid for by general taxation, and any municipality may provide for the maintenance, repair and operation of any or all of said works by taxation, whether the same are undertaken as local or general improvements."

While the foregoing statutory provisions constitute ample authority for the agreements here in question, it should be noted that the city was authorized to agree to donate or contribute to the support of the authority. *R. S.* 40:11A–21 provides as follows:

"Any city, town, borough, village, township, or county, located in whole or in part within the area of operation of a parking authority organized pursuant to this chapter (*sections* 40:11A–1 to 40:11A–25), or any amendments thereto, shall have the power from time to time to grant, appropriate, donate, contribute, or lend money to such authority or to agree to take such action."

*R. S.* 40:11A–23 provides as follows:

"For the purpose of aiding and co-operating in the planning, undertaking, construction or operation of parking projects located within the area in which it is authorized to act, any public body may upon such terms, with or without consideration, as it may determine:

\*  \*  \*  \*  \*  \*  \*  \*

(e) \*  \*  \*  Enter into agreements (which may extend over any period, notwithstanding any provision or rule of law to the contrary), with a parking authority or the Federal Government or any public body of the State of New Jersey respecting action to be taken by such public body pursuant to any of the powers granted by this act."

The vexed and vexing problems of public parking and the steps necessary to relieve the flow of traffic and provide for the safe passage of trucks and pleasure cars over our highways have had consideration in jurisdictions other than this. In *McSorley v. Fitzgerald,* 359 *Pa.* 264, 268, 59 *A. 2d* 142 (1948), the Supreme Court of Pennsylvania upheld the constitutionality of a statute authorizing the establishment of off-street parking facilities and rejected the contention that off-street parking facilities did not constitute a public use. The court said in part:

"The attack on the constitutionality of the statute is based almost entirely on the contention that the purpose for which the authority is created does not constitute a *public* use. * * * But a legislative declaration with respect to that question, while not conclusive, is entitled to a *prima facie* acceptance of its correctness * * *. Not only is the declaration of legislative findings in the present act impressive in pointing out the urgent need of legislation of this type, but the conditions it portrays are well known to all inhabitants of our larger cities. It is unfortunate that many operators of automobiles habitually ignore the fact that highways are intended primarily for travel and not for the storage of vehicles other than by way of transitory stops for loading and unloading. The congestion caused by such misuse of the streets and by the ever-increasing amount of motor vehicle traffic has become a major problem of municipal administration. * * * The widespread need of legislation to furnish such aid can be gleaned from the fact that in 1946 alone 65 cities opened new parking lots, and, by 1945, 22 states and the District of Columbia had enacted laws in some form dealing with parking facilities.

Those attacking the constitutionality of such a law as that which is here under consideration obviously labor under the mistaken notion that its purpose is merely to cater to the convenience of the owners and operators of motor vehicles; on the contrary its effect may be to interfere with the perhaps greater convenience of parking on the public streets; its real purpose is to promote the larger and more general good of the community by freeing the streets of the impediments and perils arising from dangerous and often intolerable conditions of traffic congestion. And since the act is concerned with the regulation of the transportation of persons and property along the highways of the municipality, and since the evils it seeks to remedy vitally affect conditions for the transaction of business, the prevention of accidents, the effective operations of fire and police forces, and, in general, the enjoyment of many phases of city life and activities, its justification stems directly from the exercise of the police power, which is the supreme power of government."

The court's research in connection with the instant subject matter discloses that in 15 *McQuillin, Municipal Corporations* (3*d* ed.), 36, it is stated: "* * * the public purposes for which cities may incur liabilities are not restricted to those for which precedent can be found, but the test is whether the work is required for the general good of all the inhabitants of the city." Cited with approval in *State, ex rel. Gordon, City Atty. v. Rhodes, Mayor*, 156 *Ohio St.* 81, at *page* 91 (*Sup. Ct. Ohio*, decided July 11, 1951), publica-

tion of Ohio State Bar Association, issue of July 16, 1951, *vol. XXIV, No.* 29.

The authorizing statute, *R. S.* 40:11A–2, opens with a declaration of necessity of the legislation and confers extremely broad powers on municipalities in the creation of parking authorities, and is, in the court's judgment, justifiable in the exercise of the police power of government.

The motion of the plaintiff is denied.

This court does adjudge and declare that the written contracts of January 24, 1951, April 1, 1951, and June 4, 1951, hereinbefore referred to are valid, legal and binding upon the parties thereto, being within the lawful authority of the contracting parties. The court does further adjudge and declare the defendant authority may lawfully issue and sell its bonds and other obligations for the purpose of financing the cost of providing the parking facilities mentioned and assign to the trustee for the purpose of securing the payment of such bonds and other obligations, the authority's right to receive payments which the city is required to make to the authority by the terms of the contracts. The motion of the defendant Parking Authority of the City of Hackensack for the relief demanded in its counterclaim and cross-claim on the basis of the pleadings is granted and the complaint accordingly dismissed. No costs will be allowed either party as against the other.

Submit order accordingly.