Clark *v.* Public Parking Authority of Pittsburgh.

Argued January 12, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey and Arnold, JJ.

*Morris Zimmerman,* for plaintiff.

*Ella Graubart,* with her *Charles F. C. Arensberg* and *Patterson, Crawford, Arensberg & Dunn,* for Authority, defendant.

*Paul G. Perry,* with him *Gustav W. Wilde* and *Burgwin, Churchill, Ruffin & Hazlett,* for lessee, defendant.

Opinion by Mr. Justice Allen M. Stearne, February 9, 1953:

This is a case of original jurisdiction. The plaintiff, a taxpayer of the city of Pittsburgh, has filed a complaint in equity in which she seeks an injunction to enjoin the Public Parking Authority of Pittsburgh (hereafter called the Authority) and its lessee the Mellon Square Garage, Inc. (hereafter called the Lessee) from performing or taking any action in pursuance to the sublease agreement between the two defendants executed on September 22, 1952.

The Authority was created by the city of Pittsburgh under the terms of the Parking Authority Law of June

5, 1947, P. L. 458, 53 PS 10271 et seq. Through a $4,-000,000 beneficience of the A. W. Mellon Educational and Charitable Trust, the Sarah Mellon Scaife Foundation and the Richard King Mellon Foundation, the city of Pittsburgh acquired a tract of land in the heart of what in Pittsburgh is termed the Triangle. This land is bounded by William Penn Place, Oliver Avenue, Smithfield Street and Sixth Avenue. The donation was made for the acquisition of this land for the purpose of a park to be known as "Mellon Square" and for other public purposes not inconsistent with that object. In accordance with the grant, the city agreed to lease the *subsurface* of the land to the Authority for a period of forty years at an annual rental of one dollar. The Authority covenanted to *"use the property in accordance with the terms and conditions and subject to the limitations set out in the . . . Parking Authority Law"*.

The purposes and powers of the Authority are set forth in Section 5 of the Act, supra, (53 PS 10275 et seq.). Among recited powers is to lease, *as lessee or lessor,* whatever was "necessary or desirable for carrying out the purpose of the Authority". The Authority is granted broad powers to construct facilities and to "make contracts of every name and nature" and "to enter into contracts with . . . corporations . . . for the use of any project of the Authority. . . ."

The Authority as *lessee* of the city of Pittsburgh, as above recited, agreed in the lease to use and occupy the premises in accordance with the terms, conditions and limitations of the Parking Authority Act, supra. The Authority as *lessor* then sublet the subsurface of the land for the period of thirty-eight years to the Mellon Square Garage, Inc. The Lessee (i.e. Mellon Square Garage, Inc.) agreed in the lease to construct the parking facility *at its own cost,* according to plans approved by the Authority, the Pittsburgh Planning

Commission and the donors of the gift of the land. The estimated cost of the project is $4,000,000.

The plaintiff contends that the sublease is void since it was effected by private negotiation without competitive bidding. She relies upon Section 11 (a) of the Parking Authority Law, supra, (53 PS 10281) which provides: "(a) All construction, reconstruction, repairs or work of any nature made by any Authority, where the entire cost, value, or amount of such construction, reconstruction, repairs or work including labor and materials, shall exceed five hundred dollars ($500.00), except reconstruction, repairs or work done by employes of said Authority, or by labor supplied under agreement with any Federal or State agency with supplies and materials purchased as hereinafter provided, shall be done only under contract or contracts to be entered into by the Authority with the lowest responsible bidder, upon proper terms, after due public notice has been given, asking for competitive bids as hereinafter provided." But it is to be observed that such words relate to *construction, reconstruction, repairs or work* (which exceed $500 in cost or value). Nowhere is it stated that there must be competitive bidding *for the privilege of becoming a subtenant.* In the absence of such a provision the Authority's right to privately negotiate would be unquestioned. Indeed such practice would appear to be essential. The Authority has a fundamental interest in the integrity and ability of its subtenant. The possibility of enhanced financial return from a subtenant engaged in such a purely nonprofit public enterprise, because of a higher bid, would appear to be relatively inconsequential.

The plaintiff also contends that the Authority has improperly delegated its duty to regulate rates. But under Section 13 of the sublease the *Authority* did fix the rates, which it as lessor agrees not to reduce. Also

under Section 5 (b) (8) of the Parking Authority Law, supra, 53 PS 10275 (b) (8) "Any person questioning the reasonableness of any rate fixed by the Authority" has redress by application to the court.

All of the foregoing contentions of the plaintiff are without merit.

Plaintiff also contends that the sale of gasoline, the sale of automobile accessories, automobile repair and service and the sale of any commodity of trade or commerce is prohibited by the Act, and hence any violation should be restrained.

Section 10 (B) Sublease provides: "B. Adequate space and equipment for the sale of petroleum products and automobile accessories, servicing racks and equipment, checkrooms, offices, washrooms and rest rooms for employees and for men and women patrons and waiting room space."

And Section 12: "Section 12. *Purpose*: The parking facility shall be used by the Tenant for the following purposes:

"(a) Operating a public automobile parking facility therein, including the conduct of such businesses as are usually carried on (now and in the future) in conjunction with a public parking facility, including, without limitation, the parking and storage of automobiles and other motor vehicles the sale of gasoline, oil, tires, batteries, and automobile accessories; the servicing of tires and batteries, testing of lights and brakes, washing and lubricating of automobiles; the accomplishment of minor repairs; and (b) Leasing the retail shops fronting on Smithfield Street for commercial use only, upon a fair competitive basis. All such subleases shall provide for immediate termination thereof on any default under the terms of this sublease, or under the terms of the lease from the City to Lessor."

What we have said in *Midtown Motors, Inc., v. Public Parking Authority of Pittsburgh*, 372 Pa. 475, 94 A. 2d 572, has equal application to the present case. Such sales and service are expressly enjoined. Since the sublease has no provision concerning *use* of the proposed rooms or space on the first floor on Smithfield Street, as in the above case, we expressly withhold decision.

An injunction restraining sales of petroleum products, automobile accessories, tires, batteries, servicing, etc. is hereby granted. The parties are to bear their respective costs.