## Hahn v. Palmerton Area School District

92

*Martin Philips*, for plaintiff.
*Roger Nanovic*, for defendant.

CAMPBELL, P. J., 49th Judicial District, Specially Presiding, August 22, 1963.—The pertinent pleadings in this case consist of a complaint in equity filed by plaintiff and answer containing new matter filed by defendant.

Following the taking of certain depositions by appropriate proceedings, defendant petitioned for a jury trial which the court refused for the reason that there were no substantial disputed questions of fact.

The legal questions raised in this proceeding are as follows:

1. Is there a legal requirement that defendant school district must publicly advertise for bids for the transportation of its pupils for the school year 1963-1964?

2. Must the board of directors of defendant school district award a contract for transportation of its pupils to the lowest responsible bidder?

3. May defendant school district negotiate privately with contractors on school bus contracts for the transportation of its pupils?

4. Did the board of directors of defendant school district abuse their discretion by arbitrary and capricious conduct in not awarding a school bus transportation contract to the plaintiff?

We shall consider initially the first three questions raised in this proceeding, namely, as to whether or not there is any legal requirement that defendant school district publicly advertise for bids for transportation contracts; whether the board of directors of defendant school district must award a contract for the transportation of pupils to the lowest responsible bidder and whether or not defendant school district may negotiate privately with bus contractors for the transportation of its pupils.

Defendant school board is governed by the Public School Code, Act of March 10, 1949, P. L. 30, as amended. As in all such cases, defendant school district is limited to the powers which are specifically granted, necessarily implied and those powers which are necessary to carry out the school affairs of the district. One such duty of the school district is to furnish transportation to certain students.

The school code does not set forth any statutory requirements with which a school district must comply before entering into school bus transportation contracts. There are no statutory requirements for publicly advertising for bids or requiring the school directors to award contracts to the lowest responsible bidder.

The directors of a school district need not solicit bids for transporting pupils and, if they choose to do so, they are not required to award the contract to the lowest responsible bidder unless in refusing to do so, they are acting arbitrarily or capriciously or are otherwise guilty of an abuse of discretion: Griscom v. Abington Township School District, 22 D. & C. 659.

The Supreme Court has held that in the absence of a statutory requirement, public advertising, soliciting bids, and competitive bidding is not required. See Clark v. Public Parking Authority of Pittsburgh, 372 Pa. 481; Wright v. Wagner, 405 Pa. 546.

"In the absence of charter or statutory requirement, municipal contracts need not be let under competitive bidding. So where a statute merely permits competitive bidding but does not require it, it is not necessary that the municipal authorities shall let the contract in that way. In such cases the corporate authorities are only required to act in good faith and to the best interest of the municipality": 10 McQuillan, Municipal Corporations, 3rd ed. §29.31.

Plaintiff argues that since public advertising is required for school construction, furnishing of school supplies and equipment, it should require public solicitation of bids for school transportation and failure to do so creates a situation which invites dishonesty. With this argument we would disagree and would suggest that there is no good reason for requiring competitive bidding and the awarding of a contract to the lowest responsible bidder. We would liken the transportation of pupils to that of the field of public transportation. Public bus transportation routes are not let to the lowest responsible bidder. If this were so, service could not be uniformally and steadily maintained. The terrific capital expenditures for equipment must be amortized over an appropriate period. If the bus contractor knows that he will be permitted to continue his bus contract over the period of economic usefulness of a bus, providing his rates are reasonable and service satisfactory, he will depreciate the capital cost of the bus over this period rather than attempt to recover its cost more rapidly. Good public transportation therefore depends upon proper regulation of the rates that are to be charged and the quality of service being rendered.

In the case of school bus transportation, many of these same factors are present and although competitive bids are requested, it has become the established policy of this Commonwealth to resolve the problem by

honest negotiation and by the further requirement that the Department of Public Instruction shall finally approve all school bus contracts for the purpose of reimbursement.

Even where there is a statutory requirement, it has been uniformly held that the question of who is the lowest responsible bidder is one for the sound discretion of the proper municipal authorities and does not necessarily mean the one whose bid on its face is lowest in dollars. Financial responsibility, integrity, efficiency, experience, honesty and ability to do the work are all involved: Kratz v. Allentown, 304 Pa. 51; Wilson v. New Castle City, 301 Pa. 358; Wilkins v. Buckingham Township School District, 6 Bucks 179.

What the law requires in cases of this sort is sound discretion: Hiorth v. Chester City, 282 Pa. 387.

We therefore have no hesitancy in holding that a school board need not publicly advertise for transportation contracts, need not award a contract for transportation of pupils to the lowest responsible bidder and may negotiate privately with contractors for such purposes so long as they act in good faith.

This leaves a single question as to whether or not under the circumstances of this case, the board of directors of defendant school district abused their discretion or acted arbitrarily or capriciously in not awarding a school bus transportation contract to plaintiff.

We believe that the principles of law governing this phase of the case are clear and free from doubt. It is their application to the specific facts that is subject to debate.

It is a general rule that discretionary power such as is vested in a board of school directors is not unlimited, and equity will intervene in the public interest where the school board has been guilty of an error or misapplication of law, or of arbitrary action, or of a clear abuse of discretion, especially if it results in unlawful

expenditures of public funds: McLaughlin v. Lansford Borough School District, 335 Pa. 17; Myers v. Newtown Township School District, 396 Pa. 542; Downing v. Erie City School District, 360 Pa. 29.

School directors must act in good faith and with that diligence, care and skill which ordinary prudent men would exercise under similar circumstances in their personal business affairs: McLaughlin v. Lansford Borough School District, 335 Pa. 17.

Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after an investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused: Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481; Day v. Amwell Township School District, 283 Pa. 248; Smith v. Darby School District, 388 Pa. 301.

We have scanned most carefully the actions of the board of directors of defendant school district and find no evidence of any arbitrary or capricious action. On the contrary, we feel that they acted with meticulous care basing their actions on their best judgment in the light of their previous experience. Having been once caught in a monopolistic situation wherein they were forced to pay for pupil transportation sums in excess of that which the Department of Public Instruction of the Commonwealth would approve, they established a policy to divide the hauling of school children among as many individual contractors as economically feasible. This encouraged individual bus ownership and created a pool of transportation facilities which resulted in open competition. One can readily see its advantageous aspect when contracts were open for

negotiation. This policy requires fairness and honesty on both sides. Some assurance must be given that when a contractor purchases a bus that he will have some opportunity to continue to use it so long as his charges are reasonable and services satisfactory.

The board followed this policy by requesting bids on individual bus routes. Plaintiff bid for and demanded that four routes be assigned to her. Ironically, plaintiff's husband was involved in and profited by the very incident which caused this policy to be established. If the board really desired to act capriciously, they no doubt would have refused her entirely. They did not do so and offered her two contracts which she refused. There was some justification for the board's belief that plaintiff's bid was below cost in order to take the contracts away from another satisfactory contractor. At least her bid was below previous contract figures about which plaintiff and her husband complained that the same were unprofitable. The board also had previous difficulty over the exact mileage of the bus routes with plaintiff and her husband. Under these conditions the board was suspicious of possible trouble in administering the contract.

The court was impressed with a detailed analysis of transportation costs from 1958 to 1962, prepared by the board, showing that they have been successful in continually reducing the over-all transportation costs by adhering to the established policy. While the immediate financial effect of refusing to award plaintiff a package deal on four routes appears substantial, it nevertheless is quite small percentage-wise when the total transportation costs are considered. There is every reason to believe that in future years greater savings will be accomplished as a result of the board's action.

As is previously set forth, it is crystal clear that a court may not substitute its judgment for that of the

school board. Here the board exercised its best judgment. Plaintiff is asking the court to rule that defendant school board was wrong although they violated no law, did not act arbitrarily nor abuse their discretion. She is indirectly asking the court to order defendant to award her a school bus transportation contract on her terms. This we cannot do. Whether the policy of the board is wise or in the best interest of the school district is for the school board and not the courts to decide. We believe the board acted reasonably under the circumstances.

We are fortified in our belief that the board acted in good faith by our favorable impression of the quality and stature of the members of the board of directors of defendant school district. We were highly impressed with the intelligence, sincerity, and ability of the individual members. We gained the impression that they studied the matter carefully and were never at a loss to explain the facts and circumstances upon which they based their judgment. In good conscience, we feel that the board should be commended instead of being harrassed by legal action.

While this appears on its face as a taxpayers suit, nevertheless when we closely examine the facts, it is the action of a disgruntled bus contractor challenging the policy of the board. Full explanations were made to her and an ample and fair opportunity extended to her to remain as a school bus contractor in accordance with the established policy of the board. We think her present action is ill advised. For this reason we shall assess the costs on plaintiff. . . .

### Decree Nisi

And now, August 22, 1963, it is hereby decreed and adjudicated as follows:

1. The complaint of plaintiff is dismissed and the injunction refused. Costs to be paid by plaintiff.

2. The Prothonotary of Carbon County is directed to file this opinion, enter the foregoing decree nisi, give notice to the parties or to their counsel of record as provided by the Rules of Equity Practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 10 days after said notice, this decree shall be entered as a final decree by the prothonotary.

And now, August 22, 1963, an exception is noted and bill sealed for plaintiff.