Harry M. Lasday, Appellant *v.* County of Allegheny and Elson's News and Gift Shops, Inc., Appellees.

Argued November 20, 1980, before Judges Wilkinson, Jr., MacPhail and Williams, Jr., sitting as a panel of three.

*Mark B. Aronson, Behrend and Aronson,* for appellant.

*Robert S. Barker,* Assistant County Solicitor, with him *James H. McLean,* County Solicitor, for appellee, County of Allegheny.

*John R. Friedlander, Joseph & Hershman,* P.C., for appellee, Elson's News and Gift Shops, Inc.

Opinion by Judge Wilkinson, Jr., December 18, 1980:

Greater Pittsburgh International Airport (Airport) is owned and operated by the appellee Allegheny County (County). When the Airport opened in 1952, appellant began operating a jewelry and gift shop located in the Airport; the last written lease for this shop covered the years 1966 through 1968. In 1962

appellant began operating a newsstand at the Airport; the last written lease for the newsstand covered the years 1963 through 1965. Because of the events described below, in early 1979 appellant had to quit the premises.

In July 1978 the County prepared and distributed to all interested persons a document (Proposal Information) outlining the County's plans to establish a new concession program at the Airport. The Proposal Information invited qualified prospective concessionaires to submit proposals for the new concessions. Though the Proposal Information stated that one concessionaire would be selected to operate four newsstands and two gift shops, the Proposal Information also stated that any submitted proposal constituted a suggestion to negotiate and not a bid, that the County was not obligated to respond to any submitted proposal, that the submission of a proposal would neither obligate nor entitle the County or prospective concessionaire to an agreement, and that all submitted proposals would be subject to negotiation at the option of the County. Appellant submitted his proposal for the package of newsstands and gift shops in August 1978; it was rejected. The County negotiated with other parties for the operation of only the four newsstands. In November 1978, by action of the Board of County Commissioners, the County decided to award a concession for the operation of four newsstands to the other appellee herein.

By means of his original complaint and amended complaint, appellant alleged that (1) under Section 2001 of the Second Class County Code (Code), Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §5001, the County was required to solicit bids for the operation of the retail outlets at the Airport, and (2) pursuant to the concession agreements, appellant has a common law franchise with the County for the continued opera-

tion of his retail shops at the Airport that could not be arbitrarily terminated by the County. After submission of briefs and oral argument, the court of common pleas sustained all the preliminary objections filed by the appellees and dismissed the amended complaint.[1] From the parties' statements of the questions involved and from their oral presentations, we gain that the questions before the Court are as follows:

WERE ADVERTISING AND BIDDING REQUIRED OF THE COUNTY IN CONNECTION WITH ITS GRANTING OF CONCESSIONS AT THE AIRPORT?

Appellant contends that Section 2001 of the Code applies to leases and concessions. Section 2001(a) of the Code provides:

The County Commissioners may make contracts for lawful purposes and for the purposes of carrying into execution the provisions of this section and the laws of the Commonwealth.

(a) All contracts or purchases in excess of two thousand five hundred dollars ($2,500) shall be in writing and, except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder meeting specifications, after due notice in at least one newspaper of general circulation, published or circulating in the county at least three (3) times, at intervals of not less than three (3) days where daily newspapers of general circulation are employed for such publication, or in case weekly newspapers are employed, then the notice shall be published once a week for two (2) successive weeks. The first advertisement shall

---

[1] The court sustained preliminary objections in the nature of a demurrer raising questions of, *inter alia*, failure to state a cause of action, absence as parties plaintiff of two partnerships holding the concessions in question, the parol evidence rule, and laches.

be published not less than ten (10) days prior
to the date fixed for the opening of bids.

16 P.S. §5001(a).

Section 2506(a) of the Code, 16 P.S. §5506(a), confers
the power to sell or lease real property, and provides:

(a) The board of commissioners may sell
or lease, either as lessor or lessee, any real
property belonging to the county or to others
where the county is lessee. Any sale herein au-
thorized shall be by petition to the court of com-
mon pleas, setting forth a description of the
property to be sold and the reason therefor; the
court shall thereupon fix a day for hearing and
notice of which shall be given in at least two
newspapers, in the county, of general circula-
tion, once a week for three consecutive weeks.
After hearing, the court shall make such order
and decree as shall seem right and proper.

This grant of authority imposes no advertising or bid-
ding procedures upon the making of leases. By Sec-
tion 2404 of the Code, 16 P.S. §5404, the County

acquiring land for any air navigation and ter-
minal facilities may enter into agreements in
the form of a lease, permit, license, concession
or otherwise for the use of the same or part
thereof, for an adequate consideration, with any
person or corporation desiring to use the same
for any air navigation and terminal purpose or
of any air navigation and terminal facility, on
such terms and subject to such conditions and
regulations as may be provided.

If a requirement of advertising or bidding had been
intended for Section 2404 of the Code, its language
would expressly include such procedures or an appro-
priate phrase like "on a fair competitive basis." *See
Price v. Philadelphia Parking Authority,* 422 Pa. 317,
221 A.2d 138 (1966).

Similarly, where it has been alleged that a lease was void because it was effected by private negotiation without competitive bidding, the Pennsylvania Supreme Court has upheld the right to privately negotiate. *Price v. Philadelphia Parking Authority, id.; Clark v. Public Parking Authority of Pittsburgh*, 372 Pa. 481, 94 A.2d 576 (1953).

We must therefor reject this argument of appellant and his argument that the County was without power to consider and accept a submitted proposal not totally conforming with the County's initial package.

DID APPELLANT ENJOY A COMMON LAW FRANCHISOR-FRANCHISEE RELATIONSHIP WITH THE COUNTY FOR THE CONTINUED OPERATION OF APPELLANT'S RETAIL SHOPS AT THE AIRPORT?

Appellant contends that the County's statements, warranties, conduct and actions created an understanding that the concession agreements for appellant's retail shops were to remain in full force and effect indefinitely and effected a common law franchise between the County and appellant. Appellant relies upon *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978), wherein the Pennsylvania Supreme Court declared that to be consistent with its franchisee's reasonable expectations and with principles of good faith and commercial reasonableness, a franchisor may not arbitrarily terminate the franchise relationship.

"In its simplest terms, a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under the name or mark." *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 508-09, 351 A.2d 207, 211 (1976). "'[T]he cornerstone of a franchise system must be the trademark or trade name of a product.'" *Razumic, supra* at 375,

390 A.2d at 740 (citation omitted). It is clear that no County trademark or trade name is involved in the instant case.

Appellant contends that the theory of *Razumic* should be extended to the facts alleged in his amended complaint. Examination of the equities considered in *Razumic* and comparison with the circumstances here lead us to conclude otherwise. In contrast with a gasoline service station operator having to compete with perhaps countless other stations, appellant operated his retail stores at the Airport virtually as a municipally-permitted monopoly. The newsstand's and gift shop's customers were likely less regular, more random and/or less deliberate in their patronage than are the motoring public transacting with a service station. Thus the equitable consideration of any goodwill that appellant was building would be less significant.

Accordingly, we will enter the following

### Order

And Now, December 18, 1980, the order of the Court of Common Pleas of Allegheny County, docketed to No. GD 79-5300 In Equity, dated November 20, 1979, sustaining the appellees' preliminary objections in the nature of a demurrer and dismissing the amended complaint, is affirmed.