THE CITY OF CORPUS CHRISTI V. THE CENTRAL WHARF
AND WAREHOUSE COMPANY ET AL.

No. 607.

1. **City Lease of Wharves—Legislative Powers of City.**—The powers granted the city to open streets, to construct, erect, maintain, and own wharves and charge wharfage, and to fill up flats in front of the city, were all granted for public purposes. Governmental powers were also bestowed upon it to be exercised for the public benefit, and its property rights were conferred in trust for public purposes. The power to provide for the improvement of the harbor and for the erection and maintenance of wharves and the regulation of charges for their use, was a legislative power, and the city could not surrender the unrestricted exercise of this power by making a lease to the wharf company for twenty years, although a maximum rate of wharfage was fixed by the terms of the lease.

2. **Delegation of Legislative Powers.**—The public powers or trust devolved by law or charter upon a city council, to be exercised by it in such manner as it shall judge best, can not be delegated to others. Though it may do by agent many things it is authorized to perform, it can not abandon powers granted it to the unrestricted control of any person, and thus abandon the discretion which it was expected at all times to employ.

3. **Ultra Vires.**—Though a maximum rate of charges was prescribed by the city, that did not justify the surrender of the residue of its powers to the wharf company. It was of the essence of this power and the duty which resulted, that the city should be at all times free to alter these regulations or make others, as the interest of the public demanded. The lease sued on was beyond the powers of the city.

4. **Power of Wharf Company to Take the Lease.**—Though the allegations of the petition do not affirmatively show that the leasing of the wharf and water privileges were essential to the objects and purposes for which the company was created, they do show that the company had authority to rent or acquire by purchase or otherwise water rights and property for wharves, and this is sufficient in the view taken of this case.

5. **Estoppel of Wharf Company.**—The contract had been fully executed by the city. The defendant had received the full benefit of the lease, by holding and using the property, with all of the rights and privileges for which it stipulated, until the term had expired. It will not be allowed to free itself from liability by setting up want of power in the city or in itself to make the contract.

6. **City, How Restrained from Exceeding Its Powers.**—By proper proceedings, taken by the right parties in due time, all such transgressions of power may be remedied.

APPEAL from Nueces. Tried below before Hon. J. C. RUSSELL.

*Stanley Welch*, for appellant.—1. The court erred in sustaining the general demurrer of defendant.

Power to erect wharves and fix rates of wharfage: Special Laws 8th Leg., chap. 190, sec. 6, p. 208.

Construction of power: McDonnell v. Railway, 60 Texas, 591.

Power to contract and lease: Special charter city of Corpus Christi, Special Acts 1873, to be treated as public act, secs. 1, 32, 33, 104, 160, 187, 194, 196.

As to wharves, etc.: Id., sec. 104.

Pleading: Rules for District Courts, numbers 2, 3, and 4; 84 Texas, 708.

Limitation of wharf charges: Langdon v. Mayer, 93 N. Y., 129; City of Galveston v. Menard, 23 Texas, 349.

As to estoppel from defense of ultra vires: Bond v. Terrell Mfg. Co., 82 Texas, 309, and authorities cited. Same rule applies to municipal corporations. Town of Searcy v. Yarnell, 1 S. W. Rep., 319, and authorities.

2. The benefited contracting party of a contract duly executed and expired will not be heard to deny his liability under it on the ground that it is ultra vires, or in excess of the power of the other contracting party to make it. Bond v. Terrell Mfg. Co., 82 Texas, 309, and authorities cited; Town of Searcy v. Yarnell, 1 S. W. Rep., 319, and authorities cited.

3. The court erred in sustaining the eighth special demurrer of the defendants, that it did not appear from plaintiff's petition that the defendants then had or now have any legal authority to contract with plaintiff, and to purchase, take, and hold a lease from plaintiff of its wharf and wharf franchises and privileges, when it is distinctly averred in said petition that the said defendants were by their charter authorized to rent or acquire, by purchase or otherwise, all water rights and property for wharves and warehouses, and avers lease thereunder from the plaintiff. Houston Waterworks v. Kennedy, 70 Texas, 333; Railway v. Rushing, 69 Texas, 306; Rev. Stats., art. 1190; Holloway v. Railway, 23 Texas, 466.

*H. Glass* and *James B. Wells*, for appellees.—1. Municipal corporations can exercise those powers only which are expressly or impliedly granted by charter, and all acts beyond the scope of their delegated authority and powers granted are void; and the specific grant of certain powers in a charter is an implied prohibition of all other and distinct powers; and this proposition is applicable to public and private corporations alike. Charter of city of Corpus Christi; Sayles' Civ. Stats., arts. 342, 589; Rev. Stats., art. 587; Laws 1871, sec. 23, p. 71; Land Co. v. McCormick, 85 Texas, 419; Pye v. Peterson, 45 Texas, 312–314; Williams v. Davidson, 43 Texas, 33, 34; Railway v. Morris, 67 Texas, 699, 702; City of Brenham v. Water Co., 67 Texas, 553, 554; Dill. Mun. Corp., secs. 55, 101, 102; Cool. Const. Lim., 5 ed., secs. 192, 194, 195; Green's Brice's Ultra Vires, pp. 62–64, and notes; Tel. Co. v. Railway, 10 Myers' Fed. Dec., 364; Beatty v. Knowles, 10 Myers' Fed. Dec., 353; Tel. Co. v. Railway, 10 Myers' Fed. Dec., 373; Taylor v. Railway, 10 Myers' Fed. Dec., 360; 2 Wait's Act. and Def., 312, 314, 331, 334. The above authorities apply with equal force to both public and private corporations. See also Railway v. Rushing, 69 Texas, 313.

2. The appellant could not legally even for a limited period or for any purpose transfer or alienate its water franchise and privileges held

by virtue of its charter and the statutes. Const., art. 13, sec. 3; Bridge Co. v. Waco, Texas Unreported Cases; City of Galveston v. Heidenheimer, 63 Texas, 563, 564; Railway v. Morris, 67 Texas, 699; Russell v. Railway, 68 Texas, 652; McDonnell v. Railway, 60 Texas, 595; Freem. on Ex., 179, 180; Green's Brice's Ultra Vires, 237, 238, and notes on pp. 224, 237; also pp. 29, 43, 398; 2 Wait's Act. and Def., 317; Tel. Co. v. Railway, 10 Myers' Fed. Dec., 365, par. 876; City of Brenham v. Water Co., 67 Texas, 554–561; Waterbury v. City of Laredo, 68 Texas, 576; Railway v. Morris, 67 Texas, 699, and cases cited; Williams v. Davidson, 43 Texas, 34, and cases cited; Morris and Cummings v. The State, 62 Texas, 735; 15 Am. and Eng. Encyc. of Law, 1041–1046; 1 Beach Pub. Corp., 282; Cool. Const. Lim., 5 ed., 249, 250; Dill. Mun. Corp., sec. 97; Canal Co. v. St. Louis, 10 Myers' Fed. Dec., 815, pars. 1998, 1999.

3. An ultra vires contract can not be enforced as to unexecuted part thereof, and defendants are not estopped to plead plaintiff's want of authority in this suit. City of Brenham v. Water Co., 67 Texas, 553, 555; Davis v. Sittig, 65 Texas, 497, 501, 502; Railway v. Gentry, 69 Texas, 632, 633; Green's Brice's Ultra Vires, 740; Beach Priv. Corp., pars. 438, 439, 494, and note; Thomas v. Railway, 10 Myers' Fed. Dec., 399; Scovil v. Thayer, 105 U. S., 143, 149; Bayergue v. City of Galveston, 10 Myers' Fed. Dec., 802; Railway v. Tel. Co., 10 Myers' Fed. Dec., 371.

WILLIAMS, ASSOCIATE JUSTICE.—By the general and special exceptions to the petition, the questions presented were:

1. Did the city have the power to make with defendants the contract upon which this action is founded?

2. Did the defendant corporation have power to enter into such contract?

3. If such power in either of the contracting parties was lacking, were the defendants, under the allegations, estopped from asserting that fact to defeat a recovery?

The suit was upon a bond executed by the defendant company as principal, with the other defendants as sureties, to secure the performance by such corporation of the obligations assumed by it under a lease from the city of all "wharf and water privileges" belonging to it.

The allegations of the petition, stating the facts out of which the questions arise, are in substance, that by the amended charter of the city, granted in 1860, it was provided, "That the city shall have the power and privilege of opening all the streets running east and west on the bay side of the city to the channel inside the reef in front thereof; and shall also have the power and right to construct, erect, maintain, and own the wharves or piers at the end of such streets as they may deem proper; and shall have the power to fix the rates of wharfage and to collect the same on all goods, wares, and merchandise

landed upon said wharves or piers, and to bring suit to recover the same before any court having jurisdiction of the amount in controversy; that said city shall have the power to fill up such portions of the flats covered by water, between ordinary low tide water mark and the channel inside the reef in front of the city on the bay side, as the corporation may deem necessary, for public purposes; the State of Texas hereby relinquishing and releasing unto the corporation of the city of Corpus Christi, all the rights and privileges above mentioned; provided, that the provisions of this section shall not be so construed as to effect in any manner any pre-existing right in any other party." That by a further amended adoption in 1873 it was provided, that the city "shall have and enjoy all the rights and immunities, powers, privileges, and franchises now possessed and enjoyed by said city, and may take, hold, and purchase, lease, grant, and convey, such real and personal property or estate as the purposes of the corporation may require within or without the limits thereof; and that all rights, powers, privileges, franchises, and property theretofore possessed or vested in the city should continue," etc. That the defendant, the Central Wharf and Warehouse Company, was by its charter of June 1, 1873, authorized "to rent, or acquire by purchase or otherwise, all water rights and property for wharves and warehouses," etc. That on the 7th day of August, 1875, the defendant company did lease from plaintiff all and every right, title, claim, privilege, and franchise held and owned by plaintiff under the Act of the Legislature granting to it the wharf and water privileges above stated; and that such lease made the defendant company the agent and lessee of the city for the use, enjoyment, and profits of the wharf privileges for twenty years, commencing on the 1st day of September, 1875, and ending on the 31st day of August, 1893. (There is a confusion of dates here, which is not material.) This lease is attached to the petition, and contains many provisions and stipulations by which the city reserved, to a considerable degree, control over the construction and operations of the wharves by the company in the use of the franchise and privileges let to it. These need not be stated, as the action is not based on that contract. Under it the city was to receive a portion of the earnings of the wharf company.

The petition proceeded to state, that on the 6th day of June, 1881, there was an amendment or modification of the lease, by which it was agreed that the consideration to be paid by the wharf company from April 1, 1881, to August 31, 1892, should be the sum of $4000 per annum, in installments; and that the company executed the bond sued on, with the other defendants as sureties, to secure the performance of its undertaking; and that under such agreement it had entered into and held possession, use, and enjoyment of the wharf and water privileges of plaintiff up to October 1, 1893, and had enjoyed the profits and revenues of same under the lease, and had paid the sums due as rent up to April, 1891.

The ordinance of the city, through which the original contract was changed and the bond of defendants executed, is attached to the petition. It would be tedious to state its provisions in detail. The effect of the ordinance is to relinquish to the control of the wharf company for the period mentioned all wharf and water privileges belonging to the city, and to empower the wharf company to establish such rates of charges as its "interests, business, or necessities may demand," with only the two restrictions, that such rates should never exceed eight cents per barrel of five cubic feet, and that no vessel should ever be subject to charge for lying alongside the wharves embraced in the lease.

It is proper to remark that the ordinance of 1881 amended by sections that of 1873, under which the original lease was effected. That ordinance is not attached to the petition, and without it we can not well ascertain what provisions of the original lease, if any, remain in force. The decision, however, is based upon the effect of the stipulations in the last contract.

The grant to the city of Corpus Christi contained in the Act of 1860 does not seem to have been of the fee in the soil to the channel of the bay. By the terms of the act, the "power and privilege" of opening streets, the "power and right" to construct, erect, maintain, and own "wharves," etc., "the power" to charge wharfage, "the power" to fill up flats, are granted; and all of these powers are granted for public purposes. Whether or not the grant was of the soil is not, however, very material to the decision. While proprietary rights in the franchise granted to the city, and in the wharves, piers, etc., to be constructed by it, are doubtless created by the act, it is nevertheless true, that governmental powers are also bestowed upon it to be exercised for public benefit, and the property rights conferred upon it are conferred in trust for public purposes. Says Judge Dillon: "But powers and franchises of an exceptional and extraordinary nature may be and sometimes are conferred upon municipalities, such as are frequently conferred upon individuals or private corporations. Thus, for example, a city may be expressly authorized in its discretion to erect a public wharf and charge toll for its use, or supply its inhabitants with water or gas, charging therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for the public advantage. In another sense they may be considered private, because they are such as may be and often are conferred upon individuals," etc. 1 Dill. Mun. Corp., sec. 27.

The power to provide for the improvement of the harbor of Corpus Christi and for the erection and maintenance of public wharves, and for the regulation of charges for their use, was essentially legislative, and belonged to the Legislature of the State.

By the act in question, it was relinquished to the local government of the city, to be exercised in its legislative discretion for the best interests of the people. Such powers as these, when conferred upon

municipal governments, can not be delegated, surrendered, or bartered away.

"The principle is a plain one, that the public powers or trust devolved by law or charter upon the council, or governing body, to be exercised by it when and in such manner as it shall judge best, can not be delegated to others." 1 Dill. on Mun. Corp., sec. 96. This principle is recognized by our Supreme Court in the case of McDonald v. Railway, 60 Texas, 591, in which it is said, that the right of the city to control a ferry, of which the land and appurtenances were *owned* by it, was restricted "by the fact that as a municipal corporation, in so far as it held the property as an agency of the State for public purposes, it could not surrender its control and supervision of such property into the unrestricted management and control of some other person." The same principle was applied in a case very like this in Matthews v. The City of Alexandria, 68 Missouri, 115.

It is true that a city may do by agent many things which it is empowered to perform, as illustrated by the authorities just referred to, as well as by the case of Morris and Cummings v. The State, 62 Texas, 235, and many others that might be cited. In order to build and operate the wharves, piers, etc., and do other things specified in its charter, it was necessary for it to employ agents. But without express authorization from the Legislature it could not surrender the exercise of the powers granted to it into the unrestricted control of any person, and thus abandon the discretion which it was expected at all times to employ.

The fact that a maximum rate of charges was prescribed, and that it was stipulated that vessels should be allowed to lie at the wharves free of charge, does not alter the case. This was an exercise of a portion of the legislative power intrusted to the city, but it did not justify the surrender of the residue to the wharf company for the term of the lease. It was of the essence of this power, and of the duty which resulted, that the city should be at all times free to alter these regulations or make others, as the interests of the public demanded. Waterbury v. The City of Laredo, 68 Texas, 576.

We find no provision in any of the legislation referred to which alters, as to the city, the well settled doctrine announced in these authorities. The power to "take, hold, and purchase, lease, grant, and convey, such real and personal or mixed property or estate, as the purposes of the corporation may require," is an ordinary one granted to most corporations. Without express grant it arises by implication, where the ownership of property is essential to the purposes for which the corporation is created, and such a grant can not be construed to authorize the surrender of governmental powers held for the public advantage. 2 Dill. Mun. Corp., sec. 561.

Our conclusion is, that the contract sued on was beyond the powers of the city. It is claimed also by appellees, that the allegations in the petition do not show authority in the wharf company to take the lease.

The allegations do not affirmatively show that the leasing of the wharf and water privileges in question were essential to the objects and purposes for which the company was created. They do show, however, that the company had authority to rent or acquire by purchase or otherwise water rights and property for wharves, etc., and as will be seen further on, this is sufficient for the purposes of the case, under the view which we take of it.

The next question is, can the defendant, under the facts alleged, set up the want of power in the city to make, and in itself to take, the lease?

It appears that the contract has been fully executed and performed on the part of the city. The defendant has received the full benefit of the lease by holding and using the property, with all of the rights and privileges for which it is stipulated, until the term has expired. Under such circumstances, the rule established by the later and better authorities is, that it will not be allowed to free itself from liability by setting up want of power in the city or in itself to make the contract. There was nothing immoral or illegal, in the sense of an infraction of a positive prohibition of law, in the action of either party. At most, their action was in excess of the powers conferred. The restrictions upon the powers of the city government are imposed by law for the protection of the inhabitants of the city and the general public. By proper proceedings, taken by the right parties in due time, all such transgressions of power may be promptly remedied. But when such contracts have been allowed to stand until fully carried out, it does not lie in the mouth of the party who received their benefits to urge the defense of ultra vires. To permit it would be to allow him an unjust advantage, to the detriment of those for whose protection the law, which he has disregarded, was established. We therefore are of the opinion that the defense urged by the exception is not open to defendant, if the allegations are true; and this applies as well to the denial of its own power to take the lease as to its assertion that the city had not the power to make it. Bige. on Estop., p. 465; 7 Am. and Eng. Encyc. of Law, p. 29; Beach on Priv. Corp., secs. 421–426, 432, 433; Bond v. Terrell Mfg. Co., 82 Texas, 309.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered September 13, 1894.