H. B. ZACHRY, Trustee, Appellant,

v.

CITY OF SAN ANTONIO, A Municipal Corporation, Appellee.

No. 13031.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 5, 1956.

Rehearing Denied Oct. 31, 1956.

Further Rehearing Denied Nov. 28, 1956.

Johnson, Krog & Hite, Carl Wright Johnson, Bernard Ladon, San Antonio, for appellant.

Carlos C. Cadena, City Atty., San Antonio, for appellee.

POPE, Justice.

City of San Antonio sued H. B. Zachry, Trustee, to have a lease contract from the City to Zachry declared null and void. The trial court declared the contract void and Zachry has appealed.

The contract between the City and Zachry was a forty-year lease of the sub-surface and certain entrances to Travis Park, a city park, by the terms of which Zachry agreed to construct and operate an off-street parking garage. Several troublesome questions are present: (1) Does the City possess the power, either by statute or its charter to maintain and operate off-street parking facilities? (2) If the City has the power to do so, does it have the further power to lease, for forty years, the property to an individual to build the parking facility and operate it free from all controls? (3) Is the City estopped to claim its lease contract with Zachry is void?

Under its charter, the City possesses the power to maintain and operate an off-street

parking garage. San Antonio is a home rule city. It owns the fee simple title to Travis Park. City and Zachry on October 15, 1953, entered into a lease agreement by which City leased Zachry the sub-surface of the park for forty years, together with parts of the surface needed for ingress and egress to a garage. The contract was conditioned upon Zachry's furnishing proof of financial arrangements for the project and his submission of final plans and specifications which would meet the approval of the City. Those arrangements were made and the plans approved. Zachry, under the obligations of the lease, has expended almost $60,000, a portion of which consists of rentals paid to and accepted by the City.

█ In its ordinance making the lease, the City expressly abandoned those parts of Travis Park needed for the under-ground parking facility. In our opinion, this abandonment was within the City's charter powers. Art. 1, § 3, Par. 7, Charter, City of San Antonio, infra; Moore v. City of Beaumont, Tex.Civ.App., 195 S.W.2d 968, affirmed, City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448; City of Lubbock v. Merriwether, Tex.Civ.App., 285 S.W.2d 261. Having first abandoned those parts of the park needed for the off-street parking entrances, there would be no inconsistent use.

The lease discloses that its primary and specific object is to provide off-street parking facilities, rather than the exercise of the City's general powers. To achieve that, the lease recites the lack of present parking facilities, the effect of that shortage upon the City's economy, that construction of an underground parking facility would be a valid public purpose and of value to the City, its citizens and the public; that the City had invited proposals for relieving the traffic congestion, and that Zachry, Trustee, proposed the construction of a sub-surface parking facility beneath Travis Park. The essence of this arrangement is not a mere lease, but additional parking facilities. The issue is not whether the City may lease property, but whether the City has power to provide those parking facilities.

█ Many states by statute have granted cities the power to establish off-street parking facilities. See McSorley v. Fitzgerald, 359 Pa. 264, 269, 59 A.2d 142; Note 8 A.L. R.2d 383. Texas has not done so. In Texas, however, as explained by the Supreme Court, a home rule city has full power of self-government and "full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers. Yellow Cab Transit Co. v. Tuck, Tex.Civ.App., 115 S.W.2d 455." Forwood v. City of Taylor, 147 Tex. 161, 214 S.W. 2d 282, 286, Arts. 1175, 1176, Vernon's Ann. Civ.Stats. Article 1017, Vernon's Ann.Civ. Stats., expressly grants power to sell and convey any land or interest in land owned, held or claimed as a public square, park or site for city hall.

█ City here recognizes this rule, but correctly reasons that the governing agency of the Home Rule City is not rendered omnipotent with any and all powers, unless and until those powers are found within the charter of the city. A city possesses powers not denied by statute or constitution so long as the city has incorporated those powers in its charter. Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104. Stated negatively, a city's failure to include in its charter a certain power, is a self-denial of the power. Zachry reasons that the City Charter of San Antonio grants the power to provide off-street parking facilities. If such power exists, it must be found within these provisions of the Charter:

"Article I, Section 3,

"Paragraph 1,—*General Powers.* The City may sue and be sued, plead and be impleaded in all courts, have a corporate seal, contract and be contracted with, ordain and establish such acts and regulations and ordinances not in-

consistent with the Constitution and laws of this State and this Charter, as shall be needed for the government, interest, welfare, and good order of the City, and the interest, welfare, health, morals, comfort, safety and convenience of its inhabitants; the City may purchase, take, hold, acquire and convey, lease, mortgage and dispose of any property whatever within the City limits. * * *

"Paragraph 7.—*Street Powers.* The City of San Antonio shall have the power to lay out, establish, open, alter, widen, lower, extend, grade, abandon, discontinue, abolish, close, care for, pave, supervise, maintain and improve alleys, sidewalks, parks, squares, public places, and bridges; and regulate the use thereof and require the removal from streets, sidewalks, alleys and other public property or places, of all obstructions and encroachments of every nature or character thereon. * * *

"Paragraph 13.—*Other Powers.* The City shall have power to (1) Provide for, acquire, construct, regulate, protect and maintain public buildings, works, improvements, parks, gardens, and recreational facilities of any nature. * * *

"Paragraph 14.—*Cumulative Powers.* The enumeration of particular powers and the specification of the manner of exercising the same by this Charter shall never be deemed to be exclusive nor construed as a limitation upon the general powers herein granted or upon their exercise in any other lawful manner, and in addition to the powers enumerated herein or implied thereby, or appropriate to the exercise of such powers, it is intended that the City shall have and may exercise all powers it would be competent for this Charter specifically to enumerate."

In City of Denton v. Denton Home Ice Co., 119 Tex. 193, 27 S.W.2d 119,

68 A.L.R. 866, the Commission of Appeals approved the authority of the City to manufacture ice under a statutory and charter grant of power no more specific nor broad than that of the San Antonio Charter. The San Antonio grant of power is broad and is intended to be. On the other hand, in Anderson v. City of San Antonio, 123 Tex. 163, 67 S.W.2d 1036, 1037, the Court refused the City's effort to impose a tax for advertising purposes, even though the charter granted power to pass ordinances "necessary for the order and good government of the city, or the trade, commerce and health thereof." We are unable to state a universal rule on how general is too general, but a charter may limit power as well as grant power. City of Corsicana v. Willmann, 147 Tex. 377, 216 S.W.2d 175; 2 McQuillan, 3rd Ed., § 10.25. Whether the charter is intended to grant or limit powers depends on the wording of the particular charter. 2 McQuillan, supra. In our opinion the charter, in granting power to "Provide for, acquire, construct, regulate, protect and maintain public buildings, works, improvements * * * and recreational facilities of any nature" was adequate authority for the city to provide an underground parking facility. Amstater v. Andreas, Tex.Civ.App., 273 S.W.2d 95, 99, presented an analogous situation. The authority of the City of El Paso to issue bonds for off-street parking facilities was questioned. The El Paso charter granted power to issue bonds "for permanent public improvements," language similar to the general powers granted the City of San Antonio by Article 1, Sec. 3, Par. 13, of its Charter. After reviewing many of the cases, the Court concluded that the term "permanent public improvements" included off-street parking facilities, though such facilities were not specifically named. See also, Miller v. City of Georgetown, 301 Ky. 241, 191 S.W.2d 403; State ex rel. Gordon v. Rhodes, 156 Ohio St. 81, 100 N.E.2d 225. Other precedents have approved the exercise of power to provide off-street parking on the basis of a city's power to protect the "safety" of the public. See Charter, Art. 1,

Sec. 3, Par. 1, supra. The Amstater case also treats the power to provide such facilities as an incident to the municipality's power to regulate traffic on its streets. We conclude that the City had the power to provide off-street parking facilities under its Charter.

Because the power resides in the City to provide such parking facilities, it does not follow that the City possesses the power to cede that power to someone else. Upon examination of the lease involved, it becomes apparent that the City is not exercising its powers to provide a public improvement at all; it is leasing its property to Zachry, Trustee, primarily for a private business without reservation of controls. The City, in no sense of the word, for forty years will provide parking facilities. It leases to Zachry the property so he, not the City, can provide the public with a private parking facility, and on such terms as lessee may determine.

The lease is to Zachry, Trustee, but for whom he is trustee is not known. Zachry agreed to erect a parking garage capable of accommodating from 900 to 1200 vehicles. But upon completion of the structure, Zachry, without the consent of lessor, may assign the agreement and he is then completely released and discharged from any further liability. Either Zachry, Trustee, or his assigns may sublet the premises without consent of the City, but in such event the lessee or the assignee will still be liable on the lease. Zachry, Trustee, is given the right to mortgage the leasehold upon the sub-surface to the park and all the improvements; and in the event of his default, such leasehold may be sold. The City reserves no powers nor rights concerning the rates or policy of the operations for forty years, but at the end of that time the property will all revert to the City. In other words, for forty years, the City is not going to provide for or maintain a public improvement because during all that time Zachry, Trustee, will be providing an uncontrolled private parking business.

The surrender of all controls over the facility for forty years takes from the enterprise its public nature, which is the essence of the general power upon which the City relies. Once surrendered, it ceases to be a public improvement. The claim is that Zachry, Trustee, may exercise the power because the City can. Zachry, Trustee, is not the City. Of the many cases which have permitted municipal off-street parking facilities, we find none which in the absence of express power and by implications have gone still further to permit their private rather than their public maintenance and operation.

City of Corpus Christi v. Central Wharf & Warehouse Co., 8 Tex.Civ.App. 94, 27 S.W. 803, 804, decided principles which render the lease invalid as an improper delegation of municipal powers. The charter of Corpus Christi expressly granted the right to maintain wharves and the power to fix the rates. The city, with that power, then undertook to lease the wharf facilities to a private company. The charter also granted the city the right to lease and convey real estate. The city then leased all the wharves for a period of twenty years. The issue in the case was whether the city surrendered control over this public improvement to such an extent that the contract was beyond the powers of the city. In answering that issue in the affirmative, the Court stated:

"While proprietary rights in the franchise granted to the city, and in the wharves, piers, etc., to be constructed by it, are doubtless created by the act, it is nevertheless true that the governmental powers also are bestowed upon it, to be exercised for public benefit, and the property rights conferred upon it are conferred in trust for public purposes. Says Judge Dillon: 'But powers and franchises of an exceptional and extraordinary nature may be, and sometimes are, conferred upon municipalities, such as are frequently conferred upon individuals

or private corporations. Thus, for example, a city may be expressly authorized, in its discretion, to erect a public wharf, and charge toll for its use, or supply its inhabitants with water or gas, charging therefor, and making a profit thereby. In one sense, such powers are public in their nature, because conferred for the public advantage. In another sense, they may be considered private, because they are such as may be, and often are, conferred upon individuals,' etc. 1 Dill. Mun.Corp. § 27. The power to provide for the improvement of the harbor of Corpus Christi, and for the erection and maintenance of public wharves, and for the regulation of charges for their use, was essentially legislative, and belonged to the legislature of the state. By the act in question it was relinquished to the local government of the city, to be exercised, in its legislative discretion, for the best interests of the people. Such powers as these, when conferred upon municipal governments, cannot be delegated, surrendered, or bartered away. 'The principle is a plain one that the public powers of trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others.' 1 Dill.Mun.Corp. § 96. This principle is recognized by our supreme court in the case of Macdonell v. [International & G. N.] Railroad Co., 60 Tex. 590, 591, in which it is said that the right of the city to control a ferry, of which the land and appurtenances were owned by it, was restricted 'by the fact that as a municipal corporation, in so far as it held the property as an agency of the state for public purposes, it could not surrender its control and supervision of such property into the unrestricted management and control of some other person.' The same principle was applied in a case very like this,—in

Matthews **v.** City of Alexandria, 68 Mo. 115."

The same principle is followed in City of Fort Worth v. First Baptist Church, Tex.Civ.App., 268 S.W. 1016, 1020, where the city contracted with a church to furnish free water in consideration of the church's providing a municipal swimming facility. Because the city had no controls over the charges at the swimming pools the Court held:

"It may be, and it will be conceded, that, under the terms of the charter of the city, the city may lawfully provide public swimming pools for the use and benefit of its citizens, and may contract to that end. But it cannot, under the authorities, delegate, for all time, such power to a private citizen or corporation, together with the incidental powers of regulation, fixing fees or charges, and prescribing rules of conduct for the maintenance of order and the health and safety of its citizens, * * *."

█ The clear distinction between a municipal power to provide off-street parking and its power to lease such function to a private enterprise is declared in Camden Plaza Parking v. City of Camden, 16 N.J. 150, 107 A.2d 1. In that case, as here, the Court approved the city's power to provide the facility, but refused to extend the power to include the right to lease the facility. City and County of San Francisco v. Ross, 44 Cal.2d 52, 279 P.2d 529, more recently struck down a similar private leasing arrangement. We conclude that under the charter powers of San Antonio, it may provide off-street parking facilities as a "public improvement," but the lease cedes away that power to a purely private undertaking for forty years. See City of Uvalde v. Uvalde Electric & Ice Co., Tex.Com.App., 250 S.W. 140. The lease is an uncontrolled delegation of an implied grant of municipal power and hence is beyond the city charter's grant of power. 64 C.J.S., Municipal Cor-

porations, § 1825. See Notes, 133 A.L.R. 1241, 63 A.L.R. 614.

Zachry contends that in any event the City is estopped to assert the invalidity of the lease. After the lease was executed in October, 1953, Zachry immediately made test borings at a cost of $350. He also expended the sum of $20,609.57 for architects and incurred other costs in excess of $38,000. Under the terms of the lease, Zachry has paid monthly rental in the amount of $10, and the City has accepted the rent. Zachry has also incurred costs in connection with a suit brought by Rena Maverick Green against Zachry and the City, protesting the use of park property for the garage.

■ Since the trial court found against Zachry, the implications are that the trial court found that the fact of estoppel did not exist. Factually such an implication would find support in the evidence. From the inception of this lease, the validity of the lease was questioned. Zachry attended the council meeting which approved the lease ordinance, and some of the council members protested the validity of the lease. Rena Maverick Green and others, shortly after the lease was made, filed suit to enjoin the use of the park for parking facilities, and Zachry's attorneys successfully defended the suit. Green v. City of San Antonio, Tex.Civ.App., 282 S.W.2d 769. By the lease agreement, Zachry agreed to "defend any and all legal proceedings which involve the validity of this lease agreement * * *." Hence, Zachry, from the time the lease was made, knew that the validity of the lease was being questioned. The City itself did not question the validity of the lease until June of 1955, when the council authorized the City Attorney to bring a suit for declaratory judgment testing the validity of the lease. The record supports an implied finding of fact that there was no estoppel, since Zachry knew from the beginning that the lease was legally questionable, and the lease permitted

him to postpone filing his final plans until all litigation over the contract had terminated, but he chose to go forward with his expenditures. To reverse the judgment, we would be required to find that all the evidence supported an estoppel.

■ That the City was not estopped also finds support in the law. Here, again, we must look at the powers possessed by the City. It possessed power to maintain the garage; it did not possess the power to delegate that power. Zachry, in dealing with the City, was bound to know the limits of its power. City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448, 452; City of Big Spring v. Ward, Tex.Com.App., 140 Tex. 609, 169 S.W.2d 151, 154; City of Teague v. Sheffield, Tex.Civ.App., 26 S.W. 2d 417, 420. Although a municipality may be estopped by its acts and conduct within its powers, a void act, one that is beyond its powers, may not be validated upon principles of estoppel. Community Natural Gas Co. v. Northern Texas Utilities Co., Tex. Civ.App., 13 S.W.2d 184, 194; Choice v. City of Dallas, Tex.Civ.App., 210 S.W. 753; Noel v. City of San Antonio, 11 Tex.Civ. App., 580, 33 S.W. 263, 266; 30A Tex.Jur. (Mun.Corps.) § 442; Horne Zoological Arena Co. v. City of Dallas, Tex.Civ.App. 45 S.W.2d 714.

■ A city may be estopped to assert an irregular exercise of a municipal power. City of Corpus Christi v. Gregg, Tex., 289 S.W.2d 746. Estoppel does not operate to grant a power to the City not found in its charter or in a statute. 31 C.J.S., Estoppel, § 111b; 10 McQuillan, Municipal Corporations (3rd Ed.), § 29.104.

We have examined the other points, but find them without merit. The judgment of the trial court is affirmed.

### On Motion for Rehearing.

The City, in passing the ordinance which provided for the under-ground parking facility recited that it was protecting the pub-

lic from the hazards of traffic, and declared it was executing a civilian defense plan. The ordinance stated that the action was a valid public purpose of value to the City, its citizens, and the public in general. Appellant relied upon the charter powers to do those things "needed for the government, interest, welfare, health, morals, comfort, safety and convenience of its inhabitants." Other powers relied upon were the city powers over streets, and the power to maintain public buildings, works, improvements, and parks.

It is the broad police and public powers, granted in the charter and recited in the ordinance, which form the necessary base and foundation for the City to maintain the underground parking lot. Having established, by the charter powers and recitals in the ordinance, the City's power to maintain the garage, appellant takes the position that it was, after all, not a general public power, but a local non-governmental facility which may be delegated or leased.

The question is one of delegation of public powers. Camden Plaza Parking v. City of Camden, 16 N.J. 150, 107 A.2d 1, 3, concerned a statutory grant of powers, but it is helpful in its study of the precedents. It states, concerning the public and governmental nature of underground garages:

"Action by a municipality to relieve traffic congestion through the establishment of off-street public parking facilities is the exercise of a public and essential governmental function, and publicly-owned lands used for such purposes are devoted to a public use. The parking crisis in the modern day threatens the very welfare of the community,

and statutes and court decisions recognize that public lands employed by public bodies for public off-street parking are devoted to a public purpose, R.S. 40:60–25.1, N.J.S.A., R.S. 40:56–1.1, N.J.S.A., R.S. 40:11A–1, N.J.S.A.; De Lorenzo v. City of Hackensack, 1952, 9 N.J. 379, 88 A.2d 511."

Phillips v. Officials of City of Valparaiso, Ind., 120 N.E.2d 398, 402, after reviewing other instances of a valid exercise of the police power, stated that parking facilities were analogous:

"Parking facilities, the purpose of which is to relieve congestion of the streets resulting from the use of motor vehicles in streets which obviously were not originally laid out to carry present day traffic, have a definite bearing on public safety and convenience in the use of city streets. Wayne Village President v. Wayne Village Clerk, 1949, 323 Mich. 592, 36 N.W. 2d 157, 8 A.L.R.2d 357; State ex rel. Gordon v. Rhodes, 1951, 156 Ohio St. 81, 100 N.E.2d 225, 231."

We conclude that the Charter broadly granted the power to the City to maintain the parking facility. It does not expressly, nor by implication, authorize the delegation of its power. 63 C.J.S., Municipal Corporations, § 1081. Under the wording of the Charter, for the power to exist at all, appellant must tie and did tie to powers in the nature of police and governmental functions. McSorley v. Fitzgerald, 359 Pa. 264, 59 A.2d 142. Those powers may not be surrendered. 30A Tex. Jur., Municipal Corporations, § 354.

The motion for rehearing is overruled.