OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

October 3, 2001

The Honorable Delwin Jones
Chair, House Redistricting Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0420

Re: Whether the City of Lubbock may pay the Lubbock Fire Department to provide First Responder services inside the Lubbock County Hospital District (RQ-0377-JC)

Dear Representative Jones:

You ask whether the City of Lubbock (the "City"), which is located within the Lubbock County Hospital District (the "District"), may use tax revenues to pay the expenses of the City Fire Department's First Responder services.[1] We conclude that it may.

Because First Responder services are an extension of emergency medical services (formerly known more commonly as "ambulance services"), we analyze your question by referring to a hospital district's and a municipality's authority to expend tax funds to provide emergency medical services. We consider first whether, under article IX, section 9 of the constitution, providing emergency medical services is solely the responsibility of a hospital district. *See* TEX. CONST. art. IX, § 9. We conclude that it is not. We consider second whether, under article IX, section 9, emergency medical services are "medical care" that a municipality cannot expend tax funds to provide within the boundaries of a hospital district. *See id.* We conclude that, although it may be medical care, it is within the municipality's police power to provide, and a municipality may expend tax funds to provide it.

We assume the City's charter authorizes the City, a home-rule municipality, to operate emergency medical services or First Responder services. *See* 2000-2001 TEXAS ALMANAC 471 (Mary G. Ramos ed. 1999) (listing Texas cities and denoting home-rule municipalities). A home-rule municipality possesses the full power of self-government and looks to the constitution and legislature only for limits on its extensive power. *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993) (citing *MJR's Fare of Dallas v. City of Dallas*, 792 S.W.2d 569, 573 (Tex. App.–Dallas 1990, writ denied)); *see* TEX. CONST. art. XI, § 5.

---

[1]*See* Letter from Honorable Delwin Jones, Chair, Redistricting Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Apr. 20, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

Nevertheless, a home-rule municipality may exercise only those powers that it has incorporated into its charter. *See Zachry v. City of San Antonio*, 296 S.W.2d 299, 301 (Tex. Civ. App.–San Antonio 1956), *aff'd*, 305 S.W.2d 558 (Tex. 1957).

We also assume that the City is using tax revenues to provide the First Responder services. Article IX, section 9 applies to only certain revenues; it does not apply to revenues that a municipality has received from sources not listed in article IX, section 9, such as from the federal government. *See* Tex. Att'y Gen. Op. No. H-454 (1974) at 4 (concluding that, despite article IX, section 9, county may expend federal revenue sharing funds to provide public health services).

The District was created in 1967 under article IX, section 9 of the constitution, and its boundaries are "coterminous with the boundaries of Lubbock County." *See* Act of May 17, 1967, 60th Leg., R.S., ch. 484, §§ 1, 2(a), 1967 Tex. Gen. Laws 1095, 1095-96; Tex. Att'y Gen. Op. LO-97-004, at 1. Shortly thereafter, we are told, the District began operating Lubbock Emergency Medical Services ("Lubbock EMS"), which has the sole City-issued permit to operate ambulances for emergency medical services.[2] Since 1991, Lubbock EMS has provided within Lubbock County First Responder Services, which, in brief, provide immediate on-scene care to ill or injured persons, but do not transport the persons. *See* Memorandum from Kim Judd, R.N., Vice President for Patient Care Services, University Medical Center, to Lois Wischkaemper, at 1 (Mar. 15, 2001) [hereinafter Memorandum]; Letter Brief, note 2, at 2; *infra* at -- (describing First Responder services).

Since early this year, however, the City Fire Department, which receives funds from the City, has also been providing First Responder services within the City. *See* Letter Brief, note 2, at 2. These First Responder services, you assert, are not limited to fire emergency calls, but include "all medical emergency calls in the city whenever a fire station would be the closest responder." Request Letter, *supra* note 1, at 2. Further, you state, the Fire Department performs these services "without remuneration by either the . . . District or by the patients themselves, which . . . mean[s] that the salaries, fringe benefits, vehicles[,] and all other associated expenses [are] at City . . . taxpayer expense." *Id.* You believe that the City's payment of the Fire Department's salaries, fringe benefits, vehicles, and other associated expenses, to the extent these go to provide First Responder services, may constitute prohibited expenditures for medical care under article IX, section 9 of the Texas Constitution and the District's enabling act. *See* TEX. CONST. art. IX, § 9; Act of May 17, 1967, 60th Leg., R.S., ch. 484, 1967 Tex. Gen. Laws 1095, *amended by* Act of May 29, 1987, 70th Leg., R.S., ch. 905, 1987 Tex. Gen. Laws 3073, Act of May 26, 1993, 73d Leg., R.S., ch. 677, 1993 Tex. Gen. Laws 2513, Act of May 26, 1999, 76th Leg., R.S., ch. 729, 1999 Tex. Gen. Laws 3337, Act of May 25, 1999, 76th Leg., R.S., ch. 1451, 1999 Tex. Gen. Laws 4925.

---

[2]*See* Letter Brief from Lois A. Wischkaemper, Galey & Wischkaemper, P.L.L.C., representing the District, "d/b/a University Medical Center and Emergency Medical Services," to Susan Gusky, Chair, Opinion Committee, Office of the Attorney General (May 31, 2001) (on file with Opinion Committee) [hereinafter Letter Brief].

Under article IX, section 9 of the Texas Constitution, the legislature may provide for a county hospital district's creation, establishment, maintenance, and operation. *See* TEX. CONST. art. IX, § 9. Any district created under article IX, section 9 "shall assume full responsibility for providing medical and hospital care for its needy inhabitants." *Id.* After a district's creation, "no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within" the district's boundaries. *Id.* As this office has explained, article IX, section 9 not only obligates hospital districts to assume responsibility for providing medical and hospital care for needy inhabitants and to assume various indebtedness, but it also prohibits other political subdivisions from certain actions. *See* Tex. Att'y Gen. Op. No. JM-1052 (1989) at 1.

Consistently with article IX, section 9 of the constitution, the District was specially created to "assume full responsibility for providing medical and hospital care for" District residents and needy inhabitants. Act of May 17, 1967, 60th Leg., R.S., ch. 484, § 1, 1967 Tex. Gen. Laws 1095, 1095; *see also id.* § 3, 1967 Tex. Gen. Laws 1095, 1096, *amended by* Act of May 29, 1987, 70th Leg., R.S., ch. 905, § 1, sec. 3, 1987 Tex. Gen. Laws 3073, 3073, Act of May 26, 1993, 73d Leg., R.S., ch. 677, § 1, sec. 3, 1993 Tex. Gen. Laws 2513, 2513. Moreover, since the District was created, "no other municipality or political subdivision" may "levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the" District's boundaries. Act of May 17, 1967, 60th Leg., R.S., ch. 484, § 1, 1967 Tex. Gen. Laws 1095, 1095.

Chapter 286 of the Health and Safety Code, which applies generally to hospital districts created by voter approval and which appears to correspond to article IX, section 9 of the constitution, similarly limits a governmental body that shares territory with a hospital district: After a district is created, "a county, municipality, or other governmental entity in which the district is located may not levy taxes . . . for hospital purposes or for providing care for" district residents. TEX. HEALTH & SAFETY CODE ANN. § 286.072 (Vernon 2001); *cf. id.* § 281.045(a) (stating that county or municipality located in district in county of at least 190,000 "may not levy taxes for hospital purposes"); *id.* § 283.044(a) (same, but pertaining to county or municipality located in district created under Optional Hospital District Law of 1957). Section 286.073 requires a district to be fully responsible "for operating hospital facilities and for furnishing medical and hospital care for the district's needy inhabitants." *Id.* § 286.073(a)(1) (Vernon 2001). The same section authorizes a district to "operate or provide for the operation of a mobile emergency medical service," but does not require it to do so. *Id.* § (a)(3) ; *see also* Tex. Att'y Gen. Op. No. C-759 (1966) at 3 (determining that hospital district created under article IX, section 4 of constitution did not have exclusive authority to operate ambulance service within district). Because the District was created under article IX, section 9 of the constitution and because it was created by voter approval, we assume chapter 286 of the Health and Safety Code applies to the District.

In our opinion, First Responder services are an extension of emergency medical services, and we therefore analyze the issue you raise by considering a municipality's authority to provide emergency medical services within a hospital district. Neither the legislature, the courts, nor this

office have addressed whether a municipality may provide First Responder services within the boundaries of a hospital district.

First Responder services extend emergency medical care to the emergency scene before an ambulance arrives. A First Responder Organization is an individual or organization that:

> (1)  routinely respond[s] to emergency situations;
>
> (2)  utilize[s] personnel who are emergency medical services (EMS) certified by the Texas Department of Health . . . ;
>
> (3)  provide[s] on-scene patient care; and
>
> (4)  do[es] not transport patients.

25 TEX. ADMIN. CODE § 157.14 (2001) (Tex. Dep't of Health, Emergency Medical Care). When a First Responder arrives at the scene of an emergency, his or her primary role is to stabilize the patient so that an ambulance may transport the patient to the hospital. *See* Memorandum, *supra* note 1, at 2. A First Responder typically may administer prescription drugs orally, by injection, or by intravenous solutions. *Id.* The First Responder also may administer oxygen and provide CPR services, which may include taking an EKG. *See id.* Significantly, a First Responder organization must work "in cooperation with a licensed emergency medical services provider." TEX. HEALTH & SAFETY CODE ANN. § 773.003(16) (Vernon Supp. 2001).

In our opinion, a hospital district does not have exclusive authority to provide emergency medical services or, by extension, First Responder services, within the district. Section 286.073 of the Health and Safety Code explicitly authorizes, but does not require, a hospital district to provide emergency medical services. *See* TEX. HEALTH & SAFETY CODE ANN. § 286.073(a)(3) (Vernon 2001). Moreover, article IX, section 9 of the constitution does not require a hospital district to take full responsibility to provide emergency medical services or First Responder services. On its face, article IX, section 9 requires a hospital district to provide medical care for "needy inhabitants" of the district. Article IX, section 9, like its constitutional predecessors—article IX, sections 4, 5, 7, and 8—was intended to provide additional tax revenues for the medical and hospital care "for . . . needy inhabitants" within the district. TEX. CONST. art. IX, § 9; *cf. id.* §§ 4, 5(a), 7, 8. Counties and municipalities are constitutionally limited as to the maximum property tax they may levy for general purposes. *See id.* art. VIII, § 9(a). Currently, for example, "[n]o county, city or town shall levy a tax rate in excess of Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year for general fund, permanent improvement fund, road and bridge fund, and jury fund purposes." *Id.*; *see also, e.g., id.* art. XI, § 4 (limiting general-law city with population less than 5,000 to $1.50 per $100 valuation); *id.* art. XI, § 5 (limiting home-rule municipality with population greater than 5,000 to $2.50 per $100 valuation); TEX. TAX CODE ANN. § 302.001(b) (Vernon 1999) (limiting type B general-law municipality to $.25 per $100 valuation). When counties and municipalities reach these maximum tax rates, they "are effectively precluded from performing additional services or

expanding existing ones." WOODWORTH G. THROMBLEY, SPECIAL DISTRICTS AND AUTHORITIES IN TEXAS 14 (1959). In the 1940s and 1950s, municipalities and counties, faced with rising health-care costs and the maximum tax rate, desired the creation of special hospital districts, with independent power to levy taxes, so that municipalities and counties might divest themselves of the responsibility to provide medical care for indigents. *Id.* at 83-84; *see also Sweeny Hosp. Dist. v. Carr*, 378 S.W.2d 40, 43-45 (Tex. 1964) (reviewing history of hospital district amendments to article IX); 2 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 662 (1977). While providing emergency medical services, including First Responder services, is not inconsistent with a hospital district's responsibility to provide medical care for needy inhabitants, the constitution does not require it.

Concluding that a hospital district is not the only entity that may provide emergency medical or First Responder services is not the same as determining that a municipality may provide such services. Article IX, section 9, after all, prohibits a municipality within a hospital district from levying taxes for hospital purposes or from providing medical care within district boundaries. *See* TEX. CONST. art. IX, § 9; *accord* Act of May 17, 1967, 60th Leg., R.S., ch. 484, § 1, 1967 Tex. Gen. Laws 1095 (District's enabling act); TEX. HEALTH & SAFETY CODE ANN. § 286.072 (Vernon 2001). Unlike the responsibility article IX, section 9 places on a hospital district to provide medical care "for its needy inhabitants," section 9 broadly prohibits a municipality from "expending funds for any type of medical care, not just medical care for the needy." Tex. Att'y Gen. Op. No. JM-1052 (1989) at 2; *see* TEX. CONST. art. IX, § 9.

Although this office previously has opined that a political subdivision must determine "on a case-by-case basis" whether a particular expenditure is for medical care, *see* Tex. Att'y Gen. Op. No. JM-1052 (1989) at 4, First Responder services seem to be "life-preserving or emergency care" that fall within the bounds of "medical care." The term "medical care" is not defined by article IX, section 9 or the related statutes, but it suggests certain parameters. The Medical Practice Act, title 3, subtitle B of the Occupations Code, defines the practice of medicine to include "diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions" by certain persons. TEX. OCC. CODE ANN. § 151.002(a)(13) (Vernon 2001); *see id.* § 151.001 (titling act). Thus, the term "medical care" relates "generally to the treatment of the sick or injured." Tex. Att'y Gen. LO-97-004, at 4. "Medical care includes not only . . . regular and preventive treatment for ordinary or chronic ailments," but also "life-preserving or emergency care." *Lelsz v. Kavanagh*, 673 F. Supp. 828, 834 (N.D. Tex. 1987).

Even if First Responder services are within the scope of medical care, this office determined in opinions issued after all of the relevant constitutional provisions were adopted that a municipality may operate an ambulance service within a hospital district as an exercise of the municipality's police power. *See* TEX. CONST. art. IX, §§ 4, 5, 8, 9 (adopted 1954, 1958, 1960, and 1962, respectively); *see also Sweeny Hosp. Dist.*, 378 S.W.2d at 43-44 (reviewing history of hospital-district amendments to article IX of constitution). In a 1968 opinion that did not address any limitations article IX might place on a municipality, this office concluded that "under the broad

police powers granted them by the State," municipalities may perform "'emergency' ambulance service within their cit[ies] . . . to protect the health, safety[,] and general welfare of the citizens." Tex. Att'y Gen. Op. No. M-231 (1968) at 4; *see also* Tex. Att'y Gen. Op. No. M-806 (1971) at 1-4 (concluding that City of Sherman may establish municipal ambulance service within its fire department without addressing article IX). In 1969, relying on the 1968 opinion and the fact that the legislature had not expressly delegated to any entity the authority to provide ambulance services, this office opined that "towns, cities, counties, and hospital districts each have the authority to provide such services," but only if the governing body of the relevant political subdivision has determined that the service will further its citizens' health and general welfare. Tex. Att'y Gen. Op. No. M-385 (1969) at 3-4. In *Ayala v. City of Corpus Christi* the Court of Civil Appeals adopted the police power rationale in response to a question regarding whether an ambulance service operated by the City of Corpus Christi is a public utility:

> The institution of an emergency ambulance service is . . . a service kindred to the police or fire service. This type of service is incident to the police power of the state: [*i.e.,*] to protect the health, safety, and general welfare of its citizens. [*See*] Attorney General's opinions #M-231 (1968); #M-385 (1969); #C-772 (1966);[3] #M-806 (1971).

507 S.W.2d 324, 328 (Tex. Civ. App.–Corpus Christi 1974, no writ) [footnote added]. Then, in 1978, this office explicitly determined, relying on the 1969 opinion and on *Ayala*, that ambulance service is not medical care for the purpose of article IX, section 9. *See* Tex. Att'y Gen. Op. No. H-1279 (1978) at 1; *see also id.* H-976 (1977) at 1 ("It is well[-]established in the opinions of this office that a county may provide ambulance service pursuant to the commissioner[s] court's power regarding public health."); 2 CHESTER JAMES ANTIEAU, MUNICIPAL CORPORATION LAW § 15A.15 (Antieau's Local Government Law 1989) (stating that local government's expenditures to provide ambulance service serves public purpose).

Given this office's previous opinions and *Ayala*, we conclude that article IX, section 9 does not prohibit a municipality from expending tax funds on emergency medical services and, by extension, First Responder services. Additionally, "[t]he tax prohibition of article IX, section 9 . . . should be liberally construed to accomplish an equitable and practical result." *Moore v. Edna Hosp. Dist.*, 449 S.W.2d 508, 526 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.). In this case, we construe the prohibition to permit a municipality, within the exercise of its police powers, to operate emergency medical services. Because the legislature appears to have relied on our construction of article IX, section 9 by acknowledging that a municipality may provide emergency medical services, this construction appears to achieve a "practical result." *Id.* A county, for example, is specifically authorized by statute to "provide for emergency ambulance service in

---

[3]Attorney General Opinion C-772 concludes that a commissioners court may, "under its general powers relating to the public health and sanitation," operate an ambulance service, but the opinion does not address article IX of the constitution. *See* Tex. Att'y Gen. Op. No. C-772 (1966) at 1.

the county, including . . . necessary equipment, personnel, and maintenance." TEX. HEALTH & SAFETY CODE ANN. § 774.003(a) (Vernon Supp. 2001). While we find no such explicit authority for a municipality, numerous statutes acknowledge that a municipality may provide emergency medical services. Notably, section 101.0215 of the Civil Practice and Remedies Code states that a municipality is not liable for damages arising from the exercise of its governmental functions, which include "operation of emergency ambulance service." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(18) (Vernon Supp. 2001); see TEX. CONST. art. XI, § 13(a) (authorizing legislature to define by law those municipal functions "that are to be considered governmental and those that are proprietary"); see also, e.g., TEX. HEALTH & SAFETY CODE ANN. § 773.063(d) (Vernon 1992) (encouraging municipality that receives civil penalties to compel compliance with chapter 773 to use part of sum to improve delivery of emergency medical services); id. § 774.001 (authorizing counties and municipalities to assist each other in providing emergency medical services). And we find nothing in the law that unmistakably takes away a home-rule municipality's authority to provide emergency medical services. See Robinson v. City of Longview, 936 S.W.2d 413, 416 (Tex. App.–Tyler 1996, no writ) (stating that statute may not be construed to restrict home-rule municipality's authority unless legislature has preempted area "with unmistakable clarity").

We realize that, unlike ambulance service at the time article IX, section 9 of the constitution was adopted or even at the time of the attorney general opinions and court case addressing municipal or county authority to operate an ambulance service, emergency medical services today are more likely to overlap with the "medical care" for which article IX of the constitution plainly prohibits a municipality to expend tax funds. See, e.g., Tex. Att'y Gen. Op. No. H-1279 (1978) at 1 (concluding that ambulance service is not medical care for purpose of article IX, section 9). In the nearly forty years since the electorate adopted article IX, section 9, emergency medical services have evolved essentially from providing first aid with a first-aid kit and traction splints to a virtual hospital on wheels. See Act of May 27, 1961, 57th Leg., R.S., S.J.R. 22, 1961 Tex. Gen. Laws 1309, 1309-10 (proposing article IX, section 9). Compare TEX. REV. CIV. STAT. ANN. art. 4590b, § 2 (Vernon 1976) (requiring ambulance to carry, at minimum, first-aid kit and traction splints), repealed by Act of May 30, 1983, 68th Leg., R.S., ch. 516, § 5, 1983 Tex. Gen. Laws 2987, 3006; id. § 3 (stating training requirements for person staffing ambulance in 1962) with TEX. HEALTH & SAFETY CODE ANN. § 773.003(1), (2), (12) (Vernon Supp. 2001) (distinguishing among emergency services vehicles on level and type of care they are equipped to provide); id. §§ 773.042, .043, .044, .045 (listing requirements for basic life-support, advanced life-support, mobile intensive-care, and specialized vehicles); id. §§ 773.046, .047, .048, .049, .0495 (Vernon 1992 & Supp. 2001) (stating qualifications for various types of emergency care attendants and paramedics).

We conclude nonetheless that a municipality may expend tax funds to provide emergency medical services and First Responder services despite the prohibition in article IX, section 9. This result comports with the result of long-standing prior opinions, with the legislature's apparent understanding of municipal authority, and with a practical construction of the constitutional provision. See Moore, 449 S.W.2d at 526 (stating that article IX, section 9's tax prohibition should be liberally construed to accomplish equitable and practical result).

## S U M M A R Y

Article IX, section 9 of the Texas Constitution does not exclusively authorize a hospital district to provide emergency medical services or First Responder services within the district. While article IX, section 9 prohibits a municipality from expending tax funds to provide "medical care" within the boundaries of a hospital district created under that section, a municipality may expend tax funds to provide emergency medical services within the district as an exercise of its police power. Likewise, a municipality may expend tax funds to provide First Responder services within the boundaries of a hospital district. Consequently, the City of Lubbock may pay tax funds to the Lubbock Fire Department to provide First Responder services inside the Lubbock County Hospital District.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee