## Avampato v. Greensburg Parking Authority

*Scales & Shaw*, for plaintiffs.

*John W. Pollins*, for defendant.

O'CONNELL, J., November 8, 1957.—A complaint in equity was filed by plaintiffs, Carmel Avampato, Jr.,

and Josephine M. Avampato, his wife, on October 1, 1957, against Greensburg Parking Authority, a municipal authority set up by the City of Greensburg pursuant to the Parking Authority Law of June 5, 1947, P. L. 458, 53 PS §341. Plaintiffs, in their complaint, pray the court:

(a) That the attempted condemnation of that part of complainants' property as described in the bond marked exhibit A, attached hereto and made a part hereof, be declared null and void and of no effect;

(b) That defendant, Greensburg Parking Authority, be restrained from in any way using that part of complainants' property as described in the bond marked exhibit A, attached hereto and made a part hereof;

(c) That an injunction issue requiring defendant, Greensburg Parking Authority, to restore complainants' property as nearly as possible to the condition in which it was in when defendant, Greensburg Parking Authority, started to excavate the same;

(d) Such other equitable relief as your honorable court believes just and necessary under the circumstances.

Hearings were held on this complaint on October 11, 1957, and on October 18, 1957. As a result of said hearings, we made the following

### Findings of Fact

1. Plaintiffs, Carmel Avampato, Jr., and Josephine M. Avampato, his wife, are the owners of a lot of ground in the City of Greensburg, Westmoreland County, fronting 57.4 feet on the northerly side of East Pittsburgh Street, extending in depth 115 feet, bounded on the south by said East Pittsburgh Street and on the west by a public alley, on the north by other lands of Greensburg Parking Authority, and on the east by lands of Greensburg Lodge, No. 511, Benevo-

lent and Protective Order of Elks, title to which they acquired by deed dated July 1, 1953, of record in the Office of the Recorder of Deeds of Westmoreland County in Deed Book, vol. 1460, p. 392, on which said lot of ground is erected a three-story brick building used as a restaurant and for other commercial purposes and as an apartment building, and also a one-story brick building used for commercial purposes.

2. That Greensburg Parking Authority is a body corporate and politic under the laws of the Commonwealth of Pennsylvania, having been organized pursuant to the Parking Authority Law of June 5, 1947, P. L. 458, 53 PS §341, as amended.

3. That by amendment of May 9, 1949, P. L. 969, 53 PS §342, the provisions of the Parking Authority Law were extended to third class cities as of the effective date of said amendment, to wit, May 9, 1949.

4. That on May 9, 1949, the City of Greensburg was a third class city under the laws of the Commonwealth of Pennsylvania.

5. That on May 9, 1949, the date said Parking Law became effective and applicable to the City of Greensburg, plaintiffs, Carmel Avampato, Jr., and Josephine H. Avampato, his wife, were not the record owners of the lot of ground in the City of Greensburg which is the subject of this action, but record title was in Carmel Avampato, Jr., who is one of the plaintiffs herein, by virtue of a deed dated June 4, 1923, and of record in the Office of the Recorder of Deeds of Westmoreland County in Deed Book vol. 756, p. 252.

6. By resolution dated September 12, 1957, Greensburg Parking Authority condemned a portion of the lot owned by plaintiffs, which portion is bounded and described as follows:

"ALL that certain lot of ground situate on the East side of an alley running between East Pittsburgh

Street and East Otterman Street and being between Maple Avenue and Main Street, more particularly bounded and described as follows:

"Beginning at a point common to lands of Carmel Avampato, Jr., and Josephine Avampato, his wife, of which the tract herein described is a part, other lands of Greensburg Parking Authority formerly of the Heirs of Leonard Keck, and land of Greensburg Lodge No. 511 Benevolent and Protective Order of Elks, said point being distant from the westerly side of Maple Avenue, South 79 degrees 45 minutes West 68 feet; thence from said point of beginning, South 10 degrees 15 minutes West by line of lot of Greensburg Lodge No. 511 Benevolent and Protective Order of Elks, 19.96 feet to a point; thence through lands of Carmel Avampato, Jr., and Josephine Avampato, his wife, of which the tract herein described is a part, South 79 degrees 45 minutes West 58.37 feet to a point on the easterly line of an unnamed 12 foot alley; thence along the easterly line of said alley, North 10 degrees 08 minutes West 19.96 feet to a point on other lands of Greensburg Parking Authority, formerly of the Heirs of Leonard Keck; thence along said other lands of Greensburg Parking Authority, North 79 degrees 45 minutes East 58.33 feet to the point, the place of beginning.

"CONTAINING 1,164.67 square feet, more or less," and thereafter said resolution was duly recorded in the Office of the Recorder of Deeds of Westmoreland County and a copy thereof served upon plaintiffs by registered mail. On September 20, 1957, Greensburg Parking Authority filed its bond in the Court of Common Pleas of Westmoreland County at no. 584, July term, 1957, after tender of the same had been made to plaintiffs and refused and notice given of the intended presentation to the court, and order of court directing its filing had been duly made.

7. On September 27, 1957, Greensburg Parking Authority entered upon the portion of plaintiffs' premises described in the condemnation resolution and commenced to excavate the same in connection with construction work.

8. That the portion of plaintiffs' premises which defendant has taken under condemnation proceedings is part of a proposed off-street parking facility providing for a two-level structure for the parking of cars in the City of Greensburg.

9. The portion of plaintiffs' premises taken by defendant by its condemnation resolution fronts 19.96 feet on an alley and extends in depth 58.37 feet at the rear of plaintiffs' property and was vacant land with the exception of an encroachment of 4½ feet made by a stable or frame building on adjacent premises, which encroachment was approximately 4½ feet on the alley and extended in depth approximately 50 feet.

10. That with the taking of the portion of plaintiffs' premises by the condemnation resolution there remained a vacant area at the rear of the three-story building upon plaintiff's lot, 19.71 feet by 58.37 feet, a portion of which said area, 19.71 feet on the alley by 42 feet in depth, is comparatively level, having a surface slope of only two feet in the depth of 42 feet.

11. Seven automobiles could be parked on the vacant area at the rear of the building on plaintiffs' lot, which vacant area included the portion of plaintiffs' lot described in the condemnation resolution, by leaving keys in some of the cars so that they could be moved to permit the entrance or exit of the remaining cars.

12. Not more than five cars could be parked in the vacant area on plaintiffs' lot at the rear of his building, including the portion of the same described in the condemnation resolution, without the inconvenience of moving some cars for the direct entrance and exit of any of the five cars.

13. On May 9, 1949, a portion of the tract of land being 19.96 feet by 58.37 feet was used in connection with adjacent vacant land of plaintiffs, of which it was a part, for the private parking of automobiles by tenants occupying the building on the remaining premises of plaintiffs.

14. No rent was charged directly by plaintiffs for the privilege of parking in the said area, and no schedule of rates for parking was ever adopted or posted.

15. A friend of plaintiffs was permitted to park from time to time a few days a week without charge, but with the understanding that some legal service would be rendered for the privilege. Tenants in the apartment building on said premises were permitted to park in the area as an extra privilege incident to their occupancy of the apartments, but no separation of rent was made as between rent for the apartments and the privilege of parking.

16. The operator of the restaurant in the building upon said premises was permitted to park.

17. Customers of the restaurant parked on said premises sporadically.

18. No attendant was ever present on said lot to take care of any cars of persons permitted to park thereon.

19. No sign was maintained on said lot indicating that it was a parking lot or that it was available for use by the public.

20. The use of said area for parking was confined to permitees, licensees and tenants of plaintiffs.

21. For the past two years, the area used for parking has been included in a lease from plaintiffs to A. L. Fennelli of the restaurant on said premises, said vacant lot being thrown in with the restaurant lease and no apportionment of the rent made between the

restaurant facility in the building and the use of the lot for parking.

22. For the past two years, plaintiffs have had no right to determine who shall use the vacant area for parking, it having been leased in connection with the restaurant, and this condition will continue for three years more, the lease being for five years.

23. Since the date of the lease of the vacant area along with the restaurant, any parking on the same has been primarily in connection with the operation of the restaurant and by customers of the restaurant, although the proprietor of the restaurant has permitted the tenants of the building to continue to park in this area.

24. Because of the topography and the slope of the surface of the land, not all of the tract of land being 19.96 feet by 58.37 feet described in the condemnation resolution was available for parking.

25. That, of the area of plaintiffs' land described in the condemnation resolution, being 19.96 feet by 58.37 feet, only a portion of the same, being 15.46 feet by 42 feet, was available for parking, by reason of the slope on the remaining surface and the 4½ foot encroachment of a stable on adjoining premises extending the length of the parking area.

26. The surface of the vacant area on the portion of plaintiffs' premises described in the condemnation resolution was an unpaved surface with ashes and some brickbats.

27. The public was never invited to use a portion of the plaintiffs' land described in the condemnation resolution for parking purposes, nor was its existence advertised to the public in any way.

28. No one having any legal or equitable right, either as owner or lessee, notified defendant before the passing of the condemnation resolution that the prem-

ises involved was available to the public generally for free public parking.

29. The resolution of the Greensburg Parking Authority meets all the requirements of the Parking Authority Law of June 5, 1947, P. L. 458, as amended, and said resolution or order exercising the power of eminent domain was, in fact, an ordinance.

## Conclusions of Law

1. Defendant, Greensburg Parking Authority, has the power of eminent domain under the Act of 1947, P. L. 458, as amended May 9, 1949, P. L. 969, 53 PS §§341, 342.

2. No part of the real estate covered and described in the condemnation resolution of the Greensburg Parking Authority, dated September 12, 1957, has been used continuously from May 9, 1949, to September 12, 1957, as a facility or facilities for parking motor vehicles within the meaning of the Parking Authority Law.

3. The appropriation and condemnation of the real estate of plaintiffs, Carmel Avampato, Jr., and Josephine M. Avampato, his wife, under the resolution of defendant, Greensburg Parking Authority, dated September 12, 1957, and as described in the complaint, is valid, effective and enforceable.

4. An injunction should be denied and the complaint dismissed.

5. Plaintiffs should be directed to pay the record costs.

## Discussion

The only real question for consideration by this court is whether, under the facts set forth in the pleadings, agreed to in the stipulations and adduced by the testimony, the portion of the Avampato lot as used by complainants for parking purposes is such a facility as is excluded by the Parking Authority Law.

The exclusion in the Parking Authority Law is found in section 9 of said law, the Act of June 5, 1947, P. L. 458, 53 PS §349, and is as follows:

"Provided, however, That no property . . . which at the effective date of this act is used as a facility or facilities for the parking of motor vehicles so long as said property is continuously so used, and so long as the operation of the said facility complies with parking and traffic ordinances of the city shall be taken under the right of eminent domain."

Thus, the question is, was plaintiffs' property, appropriated and taken by defendant in its condemnation resolution, such a parking facility on May 9, 1949, the effective date of the act, and used as such continuously until September 12, 1957, the date of the taking, as the legislature intended to exclude from defendant authority's right to appropriate for its purposes under the power of eminent domain?

We are of the opinion that the legislative intent in excluding parking facilities did not extend to the type of parking facility which plaintiffs had in the rear of their business property. It is evident that the rear of the Avampato lot was not used as a public parking facility but was used merely for the convenience of his tenants and his attorney.

An examination of the Parking Authority Law reveals clearly the legislative intent in section 2 of said act, in which the findings and declaration of policy are declared. After enumerating nine findings that made the enactment of this legislation imperative, the legislature concluded with this:

"Therefore it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the safety and welfare of the inhabitants thereof by the creation in first, second, second A and third class cities, boroughs, and townships of the first class of bodies corporate and politic to be known as 'Parking Authori-

ties' which shall exist and operate for the purposes contained in this act. Such purposes are hereby declared to be public uses for which public money may be spent and private property may be acquired by the exercise of the power of eminent domain": Parking Authority Law of June 5, 1947, P. L. 458, sec. 2, 53 PS §342.

Mr. Justice Horace Stern, in the case of McSorley v. Fitzgerald, 359 Pa. 264, 269, emphasizes the importance of policy and findings in the act itself as bearing on the legislative intent and showing the public necessity of the law and the public nature of its purposes:

"Those attacking the constitutionality of such a law as that which is here under consideration obviously labor under the mistaken notion that its purpose is merely to cater to the convenience of the owners and operators of motor vehicles; on the contrary its effect may be to interfere with the perhaps greater convenience of parking on the public streets; its real purpose is to promote the larger and more general good of the community by freeing the streets of the impediments and perils arising from dangerous and often intolerable conditions of traffic congestion. And since the Act is concerned with the regulation of the transportation of persons and property along the highways of the municipality, and since the evils it seeks to remedy vitally effect conditions for the transaction of business, the prevention of accidents, the effective operations of fire and police forces, and, in general, the enjoyment of many phases of city life and activities, its justification stems directly from the exercise of the police power, which is the supreme power of government. The right of eminent domain which it gives to the Authority must be viewed, therefore, not as though it were an independent and unrelated grant of such a right, but with regard to the major and primary object

of the legislation, which is to facilitate and make safe the use of the highways."

The courts of Allegheny County have held that this exclusion in the Parking Authority Law does not apply to private parking facilities: Haller v. Mount Lebanon Parking Authority, 7 D. & C. 2d 146.

The only other question remaining and argued by plaintiffs is the fact that this condemnation was done by resolution rather than by ordinance, and plaintiffs contend that this is in violation of the Parking Authority Law. Plaintiffs cite in their brief McQuillin, Municipal Corporations, 3rd Edition, vol. 5, §§15.02, 15.03 and 15.04, which distinguishes between a resolution and an ordinance. In section 15.03, we find the following:

"Leastwise, a 'resolution,' 'order,' or other form of action can accomplish the act, exercise of power, or purpose only where it meets all the requirements of, and is in fact, an ordinance."

We are of the opinion that the resolution passed by the Greensburg Parking Authority meets all the requirements of the act and it is significant to note that the condemnation in the Mt. Lebanon case, supra, was by resolution of the Parking Authority, and also in the case of Eways v. Reading Parking Authority, 385 Pa. 592, the court notes at page 596 that condemnation was by resolution.

### Decree

And now, to wit, November 8, 1957, upon consideration of the foregoing cases, it is ordered, adjudged and decreed that the complaint in equity filed by plaintiffs, Carmel Avampato, Jr., and Josephine M. Avampato, his wife, against defendant, Greensburg Parking Authority, be, and the same hereby is, dismissed, and plaintiffs are directed to pay the costs of this proceeding.